JOHNNY THOMAS CLEMMONS, D/B/A CLEM'S TEXACO v. GLENS
FALLS INSURANCE COMPANY

No. 6813SC371

(Filed 9 October 1968)

**1. Insurance § 6— construction of policy**

Insurance policies must be given a reasonable interpretation, and where
there is no ambiguity they are to be construed according to their terms.

**2. Insurance §§ 6, 141— construction of unambiguous terms favoring
the insurer**

Where provisions favoring the insurer in a burglary insurance policy
are not ambiguous, the rule requiring construction in favor of the insured
is inapplicable.

**3. Insurance § 6— construction of unambiguous words**

Unambiguous words in a policy of insurance should be accorded their
ordinary meaning.

**4. Insurance § 142— action on burglary policy — insufficiency of evi-
dence to show physical damage**

Evidence that the only mark of any kind found within burglarized
premises was a scratch on the paint of an inside window frame which would
be made by lifting the latch of the window in a normal manner *is held* in-
sufficient to show a loss within the terms of a burglary insurance policy re-
quiring that felonious exit from the premises be evidenced by physical dam-
age to the interior of the premises at the place of such exit.

APPEAL by defendant from *Clark, J.*, 27 May 1968 Session,
BRUNSWICK Superior Court.

The defendant having denied liability, plaintiff brings this action
to recover for loss of merchandise and money as a result of a bur-
glary committed upon his premises during the night of 16 March
1967, or the early morning of 17 March 1967.

On or about 22 August 1966 the defendant issued its policy No.
BR 4-43-29 insuring the plaintiff for the period 22 August 1966 to
22 August 1967 against loss of merchandise and damage to his prem-
ises by burglary.

Plaintiff operates a combination service station and grocery
store on Highway 17, about one mile north of Shallotte, North
Carolina. It is generally a one-man operation with either the plain-
tiff, his wife, or his brother in charge. Plaintiff had been in business
at this location for thirteen years, and had constructed a new store
and service station on the premises into which he moved on 1 Au-
gust 1966. The new building was constructed of concrete block, with
one or more metal frame windows at the rear. The bottom one-third

of the window is stationary, and the top two-thirds is hinged to swing outward and upward from the bottom. A latch attached to the bottom of the top section (two-thirds) fits over the metal frame across the top of the bottom section (one-third) to secure the top section from opening. This latch operates by lifting it upward to clear the top of the stationary metal frame of the bottom section and the window will then open by pushing outward on the bottom of the top two-thirds section. The latch cannot be lifted from the outside of the building, but it is accessible to anyone inside of the building; and at times the plaintiff left the store building unattended, with persons in the store building, while plaintiff serviced automobiles on the outside.

Before moving into the new building the metal frames of the windows were painted dark green, and the latch itself was painted a dark green. After the painters completed the painting of the inside of the building, plaintiff moved into the building and has never opened the window. The building is heated and air conditioned, and the window was closed and locked at all times. The plaintiff at no time unlatched the window, and at no time did he authorize anyone else to unlatch it.

On the morning of 17 March 1967 plaintiff opened his store at approximately seven o'clock and discovered merchandise and money missing. He found the top two-thirds of the metal frame window open, and merchandise scattered on the floor just inside the window. Plaintiff immediately notified a deputy sheriff and defendant's agent. An agent of the State Bureau of Investigation assisted the deputy sheriff in the investigation, but no evidence of forcible entry to the building from the outside was found. The green paint on the inside of the metal along the stationary top of the lower one-third of the window was "scarred off" just under where the window latch fits down over it. With respect to the window the deputy sheriff testified, among other things as follows: "We checked the window and there was no evidence of forcible entry at that time as far as using any kind of burglary tools . . . I am talking about the outside . . . Nothing on the window that could be determined they used a pry bar or anything to open the window." In testifying about the inside of the window the deputy sheriff stated: "The onlyest thing on the window, there was a scratch on the window that at that time we couldn't determine what it was unless it was the lock when it was in the position when the lock come down and locked it in position . . . We closed the window and opened it, after we dusted for prints, to see if the lock was defective, and it locked itself right in position."

By stipulation the case was heard by Judge Clark sitting as judge and jury. From a judgment that plaintiff recover the sum of $746.75 for merchandise stolen, the sum of $10.00 for currency stolen, and the sum of $30.00 for damages to the premises and other merchandise, the defendant appealed.

*Herring, Walton, Parker and Powell, by William A. Powell for plaintiff appellee.*

*Marshall and Williams, by A. Dumay. Gorham, Jr., for defendant appellant.*

BROCK, J.

Plaintiff's theory of trial and argument in his brief is that someone unlatched the window from the inside of the building while the store was open for business, and came back later to gain entry and exit through the unlatched window. Defendant argues that plaintiff has failed to prove a loss coming within the terms of the policy. Therefore, the only question presented by this appeal is whether plaintiff's evidence, considered in the light most favorable to him, is sufficient to support a finding that his loss was covered by the insurance contract.

[1] "Insurance policies must be given a reasonable interpretation and where there is no ambiguity they are to be construed according to their terms." *Insurance Co. v. Insurance Co.,* 266 N.C. 430, 146 S.E. 2d 410.

The only portions of the policy which are germane to this controversy are as follows:

"Glens Falls Insurance Company, Glens Falls, New York, agrees with the insured, Johnny Thomas Clemmons, D/B/A Clem's Texaco, P. O. Box 38, Brunswick, North Carolina, . . . subject to the . . . exclusions, conditions and other terms of this policy:

"INSURING AGREEMENTS

"To pay for loss by burglary, . . . while the premises are not open for business, of merchandise, . . . within the premises . . . To pay for damages to the premises . . . , and to the insured property within the premises . . . by such burglary . . .

CLEMMONS *v.* INSURANCE CO.

"SPECIAL PROVISIONS
Applicable to this Insurance

"2.  *Definitions:*

"(a)  . . .

"(b)  *'Burglary'* means the felonious abstraction of insured property (1) . . . , or (2) . . . , or (3) from within the premises by a person making felonious exit therefrom by actual force and violence as evidenced by visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the interior of the premises at the place of such exit." (Emphasis in printed policy.)

[2, 3]     It is not uncommon for insurance companies to include in their burglary or theft policies a provision that there must exist visible marks or visible evidence of force and violence in effecting a felonious entry. Such a provision is inserted for the protection of the insurer against fraud and false claims, and clearly favors the insurer over the insured. However, since such provisions are not ambiguous, the rule requiring construction in favor of the insured does not apply. Annot. 99 A.L.R. 2d 129, at 131; Annot. 169 A.L.R. 224; 10 Couch, Cyclopedia of Insurance Law 2d, Sec. 42:129, p. 762; 5 Appleman, Insurance Law and Practice, Sec. 3176, p. 311. And, although the policy in suit concerns a provision relative to an exit by force and violence, the same general principles apply, and the words of the provision being unambiguous, should be accorded their ordinary meaning.

We hold that clause 2(b)(3) quoted above reasonably means that the plaintiff must show exit by force and violence either by *visible marks made by tools, etc.,* or by *physical damage* to the interior of the premises. Obviously the plaintiff's evidence does not tend to show visible marks made by tools, or explosives, or electricity or chemicals; and therefore he proceeds upon the theory of physical damage to the interior of the premises at the place of such exit.

The testimony of the deputy sheriff with respect to the condition of the inside of the window has been set out in the statement of facts. The only other evidence in the record concerning the condition of the inside of the window is the testimony of the plaintiff. On three occasions during his testimony he described the inside of the window as he observed it after discovering the burglary. On direct examination he testified as follows:

"Q.  What, if anything, did you notice on that part of the window over which this latch fits?

CLEMMONS v. INSURANCE Co.

"A. The paint was off. Certainly scarred off of it, right down to the metal."

Then on cross-examination he testified as follows:

"Q. Am I correct, Mr. Clemmons, there was no damage with respect to the window itself that you had to have repaired?

"A. No, sir. The onlyest mark there was on the window was where that lock went up and down on the other piece of metal. It rubbed the paint off of it when it was opened. That window hadn't been opened since I moved in there."

Later, upon questioning by Judge Clark the plaintiff testified:

"THE COURT: This condition of the scarring of the paint or removal of the paint from the latch and catch was observed by you after you noticed the merchandise was gone?

"A. Yes, sir."

[4] The problem presented to us then is to determine whether plaintiff's evidence satisfies the requirement of showing *physical damage* to the interior of the premises at the place of exit.

*Physical* is defined as "material, substantive, having an objective existence, as distinguished from imaginary or fictitious." Black's Law Dictionary, 4th Ed. And according to Webster's Third New International Dictionary (1968) physical is "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary."

*Damage* is defined as "Loss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property." Black's Law Dictionary, 4th Ed. And, according to Webster's, *supra*, damage is "loss due to injury: injury or harm to person, property, or reputation."

In this case the only mark of any kind is the natural mark which would be made by lifting the latch of the window from the inside in a normal manner. We have no fault to find with Mr. Clemmons' assertion that someone obreptitiously unlatched the window while the premises was open for business and then came back under cover of night to burglarize his store. But to hold that this mark from unlatching the window from the inside in the manner in which it was designed to be unlatched comes within the definition of *physical damage* to the interior of his premises would place an unjust strain on the English language. But more than writing into this insurance contract a coverage which was clearly not intended, the interpretation asked by plaintiff would apply with equal force to the normal

wear and tear from the turning of a key in a latch, the working of a bolt, the wear on the hinges and door frame from the opening and closing of a door in the manner in which it was designed to operate.

We think also that plaintiff, as the insured, has the duty to make a reasonable effort to secure the premises when he closes for the day. The contract of insurance by its terms is applicable only "while the premises are not open for business," and the reasonable construction of this term is that when not open for business, the premises shall be locked. By plaintiff's own testimony and theory of his claim, when he left the premises on 16 March 1967 he left the window unlocked; surely, had he left the premises with the front door unlocked and entry and exit had been gained thereby, this contract of insurance would not cover his loss.

For the reasons stated we hold that plaintiff's evidence fails to show that his loss was covered by his contract, and that the trial judge erred in denying defendant's motion for judgment of nonsuit.

Reversed.

Britt and Parker, JJ., concur.