SAMUEL MANGANELLO v. PERMASTONE, INC.

No. 158

(Filed 31 January 1977)

1. **Rules of Civil Procedure § 50— motion for directed verdict — ruling when close question presented**

Where the question of granting a directed verdict is a close one, the better practice is for the trial judge to reserve his decision on the motion and allow the case to be submitted to the jury since (1) if the jury returns a verdict in favor of the moving party, no decision on the motion is necessary and an appeal may be avoided; and (2) if the

**Manganello v. Permastone, Inc.**

jury finds for the nonmoving party, the judge may reconsider the motion and enter a judgment notwithstanding the verdict. On appeal, if the motion proves to have been improperly granted, the appellate court then has the option of ordering entry of the judgment on the verdict, thereby eliminating the expense and delay involved in a retrial.

## 2. Rules of Civil Procedure § 50— motion for directed verdict

A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff.

## 3. Negligence § 53— swimming facility operator — duty to patrons

While the operator of a swimming facility used for public amusement is not an insurer of the safety of his patrons, he must exercise ordinary and reasonable care for their safety lest he be held liable for injury to a patron resulting from breach of his duty.

## 4. Negligence § 53— recreational facility proprietor — vigilance required

The vigilance required of the proprietor of a recreational facility in discovering a peril to an invitee and the precautions which he must take to guard against injury therefrom will vary with the nature of the facility, the portion of the facility involved, and the degree of injury reasonably foreseeable.

## 5. Negligence § 53— swimming pool operator — duty to provide supervision

At least as to paying invitees, a swimming pool operator must exercise ordinary care to provide a sufficient number of competent attendants to supervise the swimmers not only for the purpose of warning or rescuing those in imminent danger, but also to guard the swimming facility and surrounding areas for potentially dangerous activities.

## 6. Negligence § 53— swimming pool — rough or boisterous play — foreseeable consequences

While rough or boisterous play in water is not dangerous *per se*, hazardous consequences to other swimmers and bathers are clearly reasonably foreseeable when such activities are left unattended and unrestricted.

## 7. Negligence § 57— swimming pool operator — failure to control "horseplay"

Plaintiff's evidence was sufficient for submission to the jury of the issue of negligence by defendant swimming facility operator where it tended to show that plaintiff was an invitee at defendant's swimming facility; some young men, located some 20 to 30 feet from plaintiff, began standing on the shoulders of each other and jumping backwards into the water; this "horseplay" continued for at least 20 minutes during which time the young men moved closer to where plaintiff was located in the water; defendant's lifeguards did nothing to stop or control such conduct; one of the young men jumped backwards from the shoulders of another and fell on plaintiff; and such

activity was not an accepted aquatic practice under Y.M.C.A. and American Red Cross guidelines.

APPEAL by plaintiff pursuant to G.S. 7A-30(2) to review decision of the Court of Appeals reported at 30 N.C. App. 696, 228 S.E. 2d 627 (1976) (opinion by Britt, J., Hedrick, J., concurring, Martin, J., dissenting), affirming judgment of *Hall, J.,* at the 17 November 1975 Civil Session, CUMBERLAND Superior Court.

Plaintiff instituted this action to recover damages for personal injuries. Plaintiff's evidence tended to show that the plaintiff, along with his family and friends, went to Permastone Lake, owned by defendant corporation, on Labor Day 1973. The parties stipulated that the defendant was engaged in operating a recreational facility which included a lake for swimming and that defendant charged a fee to members of the general public to use the lake and adjacent facilities. Plaintiff testified that on 3 September 1973 he paid the fee for himself and his family. It was further stipulated that defendant employed lifeguards at Permastone Lake for safety purposes and that lifeguards were present and on duty on the day and during the hours in question.

After plaintiff had been at the lakeside for some time, he entered the water with his children near the sliding board. Plaintiff's children slid down the board while plaintiff stood by to catch them and otherwise look after their safety. The water was about chest high on the plaintiff in the sliding area. The sliding continued for approximately one hour.

While this was going on, some young men, located about 20 to 30 feet away, began standing on the shoulders of one another and jumping backwards into the water. This activity continued for at least 20 minutes during which time the young men either gradually or suddenly moved over closer to the slide.

Plaintiff, thinking his children had been in the water long enough, sent them ahead to the pier. While he was swimming behind them to the dock, one of the young men jumped backwards from the shoulders of another and fell upon the back of plaintiff's head and neck, forcing him under the water. When plaintiff surfaced, he appeared to have been "knocked silly." A friend assisted him to the pier where he rested for about five minutes. Sometime later, a man, who was apparently the father

of the young man involved, came up and apologized for the conduct of his son.

Earlier, plaintiff had observed the young men doing backflips but stated on cross-examination, "I did not see any danger to myself or my children or the people around the slide while I was there with the children. The last time I saw the men they were far enough away that I was not concerned about them."

The lifeguards on duty were 16 to 17 years of age and, according to the testimony, at times appeared to be paying more attention to the young female patrons than to the swimmers. These lifeguards did nothing to stop or control what the plaintiff described as "horseplay" and did not come to the plaintiff's aid at any time after he was injured.

The trial court permitted a Physical Education Director of the Fayetteville Y.M.C.A. to testify to accepted standards of aquatic safety as promulgated by the American Red Cross and the Y.M.C.A. The witness testified that it was not an acceptable aquatic practice to allow young men to get on one another's shoulders and do backflips into the water.

Plaintiff offered expert medical testimony to the effect that he had sustained a five percent permanent neck disability which could have been caused by the blow received at Permastone Lake.

At the conclusion of plaintiff's evidence, Judge Hall directed a verdict for the defendant and dismissed the action. Plaintiff appealed and the Court of Appeals affirmed the judgment.

*Smith, Geimer & Glusman, P.A., by Kenneth Glusman for plaintiff appellant.*

*Clark, Clark, Shaw & Clark by Heman R. Clark for defendant appellee.*

COPELAND, Justice.

The sole issue presented by this appeal questions whether the trial court erred in directing a verdict for the defendant. We hold that the trial court did commit error.

[1] Before discussing the merits of this case, one procedural point deserves mention. Where the question of granting a di-

rected verdict is a close one, the better practice is for the trial judge to reserve his decision on the motion and allow the case to be submitted to the jury. If the jury returns a verdict in favor of the moving party, no decision on the motion is necessary and an appeal may be avoided. If the jury finds for the nonmoving party, the judge may reconsider the motion and enter a judgment notwithstanding the verdict under G.S. 1A-1, Rule 50(b), provided he is convinced the evidence was insufficient. On appeal, if the motion proves to have been improperly granted, the appellate court then has the option of ordering entry of the judgment on the verdict, thereby eliminating the expense and delay involved in a retrial. *See* Comment, G.S. 1A-1, Rule 50 (1969); 5A Moore's Federal Practice § 50.14 (2d ed. 1975).

[2]   A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. *Investment Properties of Asheville v. Allen,* 281 N.C. 174, 188 S.E. 2d 441 (1972); *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297 (1971). On defendant's motion for a directed verdict, plaintiff's evidence must be taken as true and all the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom. *Anderson v. Butler,* 284 N.C. 723, 202 S.E. 2d 585 (1974); *Adler v. Insurance Co.,* 280 N.C. 146, 185 S.E. 2d 144 (1971). As was true of a compulsory nonsuit, a directed verdict is not properly allowed "unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *See Lieb v. Mayer,* 244 N.C. 613, 94 S.E. 2d 658 (1956); *Graham v. Gas Co.,* 231 N.C. 680, 58 S.E. 2d 757 (1950).

We do not quarrel with the Court of Appeals' statement of the law in its opinion but do disagree with its application of the law to the facts in the instant case.

[3]   The duty imposed on the owner or proprietor of a swimming facility used for public amusement is stated generally in *Wilkins v. Warren,* 250 N.C. 217, 108 S.E. 2d 230 (1959). The owner is not "an insurer of the safety of his patrons" but he must exercise "ordinary and reasonable care" for their safety lest he be held liable for injury to a patron resulting from

breach of his duty. *Wilkins, supra* at 219, 108 S.E. 2d at 232. We discussed a proprietor's duty to protect invitees against the acts, negligent or intentional, of third parties in *Aaser v. City of Charlotte,* 265 N.C. 494, 144 S.E. 2d 610 (1965). In that case we said:

> "In the place of amusement or exhibition, just as in the store, when the dangerous condition or activity . . . arises from the act of third persons, whether themselves invitees or not, the owner is not liable for injury resulting unless he knew of its existence or it had existed long enough for him to discover it by the exercise of due diligence and to have removed or warned against it. [Citations omitted.]

> " 'The proprietor is liable for injuries resulting from the *horseplay* or *boisterousness* of others, regardless of whether such conduct is negligent or malicious, if he had sufficient notice to enable him to stop the activity. But in the absence of a showing of timely knowledge of the situation on his part, there is no liability.' " (Emphasis added.) [Citation omitted.] *Aaser, supra* at 499-500, 144 S.E. 2d at 615.

Webster's Third New International Dictionary at page 1093 (1971) defines "horseplay" as "rough or boisterous play." In *Aaser, supra,* the boisterous activity complained of consisted of young boys knocking a hockey puck back and forth with hockey sticks in a corridor of the Charlotte Coliseum. The plaintiff, a paying spectator at an ice hockey game, sued for damages for injuries she sustained when struck by a puck while walking in the corridor during an intermission. We held in that case that a nonsuit should have been granted because there was no showing that the defendant had any knowledge of an unsafe condition in the corridor or that the defendant could have discovered the condition by the exercise of reasonable care in inspecting the corridors.

*Aaser* is distinguishable from the case at bar. In *Aaser* the plaintiff had passed through the same corridor a few minutes before she received her injury and had not observed the boys playing. In fact, she did not notice the boys' activity on her return trip through the hallway until after she was struck. Nor was there any evidence introduced tending to show that anyone else had seen these boys, or any others, playing in the corridor

in any dangerous manner on the evening in question prior to the time the plaintiff was struck. In the instant case, uncontroverted testimony established that the "horseplay" had continued unabated for at least 20 minutes before the plaintiff was injured.

[4]   The vigilance required of a proprietor in detecting potentially dangerous activity will vary with the circumstances. In *Aaser*, Justice Lake speaking for our Court, said, "[T]he vigilance required of the owner of the arena in discovering a peril to the invitee and the precautions which he must take to guard against injury therefrom will vary with the nature of the exhibition, the portion of the building involved, the probability of injury and the degree of injury reasonably foreseeable." *Aaser, supra* at 499, 144 S.E. 2d at 614. The same considerations apply in determining the vigilance required of the owner of a recreational facility.

[5]   As Judge Martin correctly pointed out below in his dissenting opinion, the duty imposed is greater with respect to a swimming facility where the water "poses inherent dangers" and "the lifeguards are employed for the specific purpose of keeping a lookout over all patrons." 30 N.C. App. at 704, 228 S.E. 2d at 631. At least as to paying invitees, swimming pool operators must "exercise ordinary care to provide a sufficient number of competent attendants to supervise the bathers and to rescue any of those who appear to be in danger." *Sneed v. Lions Club,* 273 N.C. 98, 101, 159 S.E. 2d 770, 773 (1968). The supervision required is not merely for the purpose of warning those who are in imminent danger or rescuing those who have already been injured, but includes the duty to guard the swimming facility and surrounding areas for potentially dangerous activities. Preventive supervision at a pool or lake poses little additional burden on the proprietor and results in the avoidance of many unnecessary water related accidents.

[6]   While rough or boisterous play in water is not dangerous *per se,* hazardous consequences to other swimmers and bathers are clearly reasonably foreseeable when such activities are left unattended and unrestricted. If rough or boisterous play is to be permitted at all, it should be confined to a restricted area or, at a minimum, closely guarded. We have said that "[t]he law does not require the owner to take steps for the safety of his invitees such as will unreasonably impair the attractiveness of his establishment for its customary patrons." *Aaser v. Char-*

*lotte, supra* at 499, 144 S.E. 2d at 614. However, this does not alter the proprietor of a public establishment's duty to see that all permitted activities are conducted in a reasonably safe manner.

**[7]** The Court of Appeals in seeking to fit this case into the holding of *Aaser v. Charlotte, supra,* indicated that the activity did not become dangerous until the plaintiff and those engaged in doing backflips had moved close enough together for the plaintiff to be in striking range, and that the activity, after it had become dangerous to plaintiff, did not exist long enough to put the defendant on notice. This position is untenable and not supported by our case law.

The activity here in question, backflips done from off another's shoulders, qualifies as a "rough or boisterous" activity. The testimony of plaintiff's witness that this activity was not an accepted aquatic practice under Y.M.C.A. and American Red Cross guidelines is some evidence that dangerous consequences could reasonably be expected to flow from this type of activity.

The nature of the activity was such that its participants could reasonably be expected to change direction and move to different locations posing danger to other swimmers and bathers. The fact that plaintiff testified that, when he first observed the young men engaged in the horseplay, "they were far enough away that they weren't causing me any problems," is not a controlling factor in this case.

Presumably, many people were engaged in recreational activity in Permastone Lake on Labor Day; the "acre or two" lake was described as "moderately crowded." Without question, defendant owed a duty to all its patrons, including plaintiff, either to prohibit roughhousing or to closely supervise it. A jury question has been presented as to whether plaintiff's injury was proximately caused by a breach of this duty. The decision of the Court of Appeals affirming Judge Hall's directed verdict for defendant was therefore erroneous and must be

Reversed.