RUSSELL NORMAN v. RICK BANASIK D/B/A THE MOTOR WORKS AND OHIO CASUALTY INSURANCE COMPANY

No. 8021DC635

(Filed 17 March 1981)

**Insurance § 142– burglary and theft policy – failure to show entry or exit by force and violence**

Insured's evidence was insufficient to show a theft by burglary within the meaning of an insurance policy which required proof of entry or exit by force and violence either by visible marks made by tools, explosives, electricity or chemicals, or by physical damage to the premises at the point of entry or exit, where insured's evidence showed only that mortar dust on the floor next to the sliding door at the rear of insured's garage had been disturbed and that a bolt had been unscrewed and removed from a metal plate in the floor which guided and held the door so that the plate would swivel and permit the door to be pulled inward between a foot and eighteen inches.

Judge HEDRICK dissenting.

APPEAL by defendant Banasik from *Keiger, Judge.* Judgment entered 17 January 1980 in District Court, FORSYTH County. Heard in the Court of Appeals 15 January 1981.

Plaintiff instituted this action against his employer, Banasik, and his employer's insurer, Ohio Casualty Insurance Company, for the loss of his mechanic's tools. The tools were apparently stolen from the employer's place of business on the night or morning of 1-2 December 1978. Employer Banasik brought a cross-claim against codefendant Ohio Casualty for the value of all tools, parts, and equipment found missing on the morning of 2 December 1978, including those of the plaintiff.

Ohio Casualty pled as an affirmative defense, to both the claim of plaintiff Norman and the cross-claim of codefendant Banasik, that the only theft loss against which it had insured

Banasik was burglary, burglary being defined in the policy as follows:

> " 'Burglary' means the felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity, or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry, or (2) from within a showcase or show window outside the premises by a person making felonious entry into such showcase or show window by actual force and violence, of which force and violence there are visible marks thereon, or (3) from within the premises by a person making felonious exit therefrom by actual force and violence *as evidenced by visible marks* made by tools, explosives, electricity or chemicals upon, *or physical damage* to the interior of the premises at the place of such exit." [Emphasis added.]

Ohio Casualty's motion for summary judgment was denied.

At trial the evidence presented by plaintiff and defendant Banasik tended to show the following: On the morning of 2 December 1978, Robert Banasik, a Motor Works employee, arrived at defendant Rick Banasik's place of business. He noticed that the front door was closed, but unlocked. When he entered the building, he found various tools and other items in disarray and that several items were missing. He telephoned the police and later his brother, Rick Banasik. When defendant Banasik arrived, police officer Smith had already made a preliminary investigation, which failed to produce significant clues as to how the break-in had occurred. There were no visible signs of tampering with the front door locking mechanism, nor were any windows broken. After the officer left, Rick Banasik continued to explore the building; as he approached the large sliding door at the rear of the garage, he noticed that some mortar dust on the floor next to the door had been disturbed. His attention having been drawn to the spot, he then discovered that a bolt was missing from an L-shaped metal plate attached to the floor by bolts at the lower left-hand corner of the doorway. He found the bolt lying several feet away. The function of the plate is to help secure the door, to guide it, and to keep it from being

pushed or pulled inward. With the bolt missing, the plate would swivel on the remaining bolt, which would allow the door to be pulled inward between one foot and eighteen inches. When Banasik had closed the shop the previous evening, the bolt and plate had been secure.

Approximately $4,000 worth of hand tools, items of equipment, and auto parts were stolen. All of these were small enough to be taken through the opening created by pulling the rear door inward; in addition, a person could crawl through the opening, as Banasik succeeded in doing that day.

At the close of plaintiff's evidence, defendant Banasik moved for a directed verdict against the plaintiff on the issue of his negligence. The motion was granted; therefore, neither that issue nor plaintiff himself is directly involved in this appeal. At the close of defendant Banasik's evidence, codefendant Ohio Casualty moved for directed verdict against the other parties. This motion was granted "on the ground of the insufficiency of the evidence to show a 'burglary' within the policy definition ..." from which ruling defendant Banasik appeals.

*William B. Gibson for defendant appellant Banasik.*

*Hudson, Petree, Stockton, Stockton & Robinson by W. Thompson Comerford, Jr. and William A. Brafford for defendant appellee, Ohio Casualty Insurance Company.*

CLARK, Judge.

Appellant's single assignment of error is to the granting of directed verdict for appellee. The trial court ruled that the evidence, taken in the light most favorable to appellant, was insufficient to permit twelve reasonable jurors to find that a burglary, *as defined by the policy of insurance,* in fact occurred. We agree.

The policy definition of "burglary" appears to be a standard provision in burglary policies and the provision has been previously explained and interpreted as follows:

"It is not uncommon for insurance companies to include in their burglary or theft policies a provision that there must exist visible marks or visible evidence of force and violence in effecting a felonious entry. Such a provision is inserted for the protection of the insurer against fraud

and false claims, and clearly favors the insurer over the insured. However, since such provisions are not ambiguous, the rule requiring construction in favor of the insured does not apply. . . . And, although the policy in suit contains a provision relative to an exit by force and violence, the same general principles apply, and the words of the provision being unambiguous, should be accorded their ordinary meaning.

We hold that clause 2(b)(3) quoted above reasonably means that the plaintiff must show exit by force and violence either by *visible marks made by tools, etc.*, or by *physical damage* to the interior of the premises."

*Clemmons v. Insurance Co.*, 2 N.C. App. 479, 482, 163 S.E. 2d 425, 427 (1968). There is no evidence of any marks on the outside of the building. The only evidence of any entry signs on the inside the building, was that dust had been swept away. This could have occurred in any number of ways and certainly would not support an inference that the disturbance of the dust was a "visible [mark] made by tools, explosives, electricity or chemicals . . . ." *See* policy language quoted *supra*.

The only other means available to appellant of establishing entry or exit by force and violence would be to argue, as he does, that the removal of the bolt from the plate in the floor constituted "physical damage to the interior of the premises at the place of such exit." *Id.* Under the circumstances of this case, we fail to see how removal of the bolt, so that the back door would partially open, constituted physical damage to the premises any more than did picking the lock so that the front door would open. Appellant's testimony tended to show that the bolt was simply screwed out of the lag with a wrench, as any threaded device is designed to do, not ripped up from the floor. Appellant testified that he replaced the bolt and then welded the bolt head to the plate, not because the bolt had been damaged and welding was necessary to repair it, but "so that nobody could take a wrench and unscrew the bolt back out of the lags in the floor." The evidence establishes that appellant was able to return the bolt/plate configuration to its prior condition by simply screwing the bolt back into the lag from which it had been unscrewed. Unscrewing the bolt and pivoting the plate obviously damaged neither, or they would have required some repair before the

bolt/plate configuration could be replaced. Appellant has not alleged that there were any marks on the plate or the bolt. Appellant thus fails to establish a prima facie case for recovering under the contract by failing to produce any evidence of "visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to the interior of the premises as the place of such exit."

The trial court's entry of directed verdict is

Affirmed.

Judge MARTIN (Robert M.) concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting:

While I agree that unambiguous provisions in an insurance policy must be construed in favor of the insurer, the evidence, upon a motion for a directed verdict, must be considered in the light most favorable to the party with the burden of proof, and such party is entitled to every inference reasonably deducible therefrom. The majority seems to have considered the evidence in its light most favorable to the insurer.

In my opinion, when the evidence is construed in the light most favorable to defendant Banasik, it reveals an entirely different picture from that of the majority. Plaintiff Norman testified as follows:

I saw that a piece of steel at the back door was broken loose where somebody had knocked it loose and come in the back door. That's how I assumed the thieves had gotten in. The door had been pushed open, and the piece of metal had been knocked back. I didn't see any evidence of damage to the outside of the door. I wasn't really worried about it though; I knew my tools were gone and that is what I was concerned about.

Defendant Banasik testified as follows:

This is a pretty old building and the mortar between the bricks, the dust falls out of the mortar and down along the door behind the plate. I noticed that it looked like somebody had taken a broom or their hand and swished the dust, just

kind of swept the dust aside. I saw that one of the bolts was missing and several feet away from where these bolts had been in the floor one of these bolts was lying underneath the car that was parked next to the door. I observed that with just one bolt in the plate, the plate could swivel like this and I could pull the door open; I could move the bottom of the door between a foot and eighteen inches.

That day I took the bolt that I had found underneath the car and *rammed* it back into the floor and took a torch and welded the heads of the bolts to the plate so that nobody could take a wrench and unscrew the bolts back out of the lags in the floor.

. . .

The plate-door system the previous Friday evening when I closed the business had all been secured. The Saturday morning when I came in there and found the bolt missing, when I opened the door and closed the door a couple of times, the plate was bouncing back and forth off the wall and I'd surely have noticed that Friday night when I locked up the place.

. . .

On that Saturday morning, I pulled the rear door back; the door came out twelve to eighteen inches, large enough for tires to go out the back door, large enough for a person to go out the back door. I slipped through the hole to see if it could be done.

. . .

The plate was pretty much in place; the end where the bolt was missing was cocked out a little bit. In order to allow the foot or eighteen inches of clearance, the plate moves clear out of the way. ...

When I noticed that the bolt was missing, the plate was cocked over such that the bolt would not have gone down back into the lag in the floor. ...

I welded those lag bolts so they couldn't be *wrenched out again* on the day of the burglary, about 10:30, 11:00. ...

There is a few inches clearance between the steel plate as it fits up against the sliding door and the wall; there is a few inches play between the plate and the door. From the outside of the door to this bolt, I tried it and I can get my hand through the clearance between the door and the wall and I can take a wrench or an extension of some sort and get to it. It requires some contortion, but it can be done.

[Emphasis added.]

In my opinion, the above-quoted evidence clearly distinguishes the present case from *Clemmons v. Glens Falls Insurance Co.*, 2 N.C. App. 479, 163 S.E. 2d 425 (1968). Additionally, in my opinion, the above-quoted evidence is sufficient to raise an inference that the premises were entered by "force and violence." One inference reasonably deducible from this evidence is that a burglar pushed upon the back door from the outside, reached in with "a wrench or an extension of some sort," and "wrenched" the bolt out of the plate, allowing the plate mechanism to swivel and the door to be forced open enough to enable the burglar to enter. The manner of the bolt's removal is of less significance than the fact that the bolt was removed. In this regard, I find the case *sub judice* clearly distinguishable from *Clemmons v. Glens Falls Insurance Co., supra,* where the evidence merely tended to show that the window had been unlatched.

In *Clemmons v. Glens Falls Insurance Co., supra,* unlike the instant case, the evidence simply did not show entry by force and violence. As pointed out by the majority, the purpose of the provision in the policy is to prevent fraudulent claims. I vote to reverse the directed verdict for defendant Ohio Casualty Insurance Company.