RUSSELL NORMAN v. RICK BANASIK, D/B/A THE MOTOR WORKS AND OHIO CASUALTY INSURANCE COMPANY

No. 19

(Filed 3 November 1981)

Insurance § 142— action on burglary policy—sufficiency of evidence to show physical damage—summary judgment improper

  Evidence that tools were missing from an automobile repair shop; that the front door, which had been locked the night before, was closed but unlocked; that a bolt was missing from an L-shaped steel plate that held the rear sliding door in place; that, at this location, mortar dust had been "swept" aside; and that there was no evidence of forced entry or access from any other door or window was sufficient for the loss to come within the provision of an insurance policy requiring theft by actual force and violence as evidenced by physical damage to the interior of the premises at the place of the exit. Therefore, summary judgment for the insurance company was improper as the "felonious exit" which the jury must find may consist of merely the exit of a thief's hand in pushing some of the stolen items through the rear door.

APPEAL by defendant Banasik as a matter of right pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, 51 N.C. App. 197, 275 S.E. 2d 542 (1981), affirming the judgment of *Keiger, D.J.*, entered 17 January 1980 in the District Court, FORSYTH County, directing a verdict in favor of defendant Ohio Casualty Insurance Company.

  Plaintiff instituted this action against his employer, Banasik, and his employer's insurer, Ohio Casualty, to recover for

the loss of his mechanic's tools apparently stolen from the employer's place of business during the night or early morning hours of 1-2 December 1978. Banasik brought a cross-claim against the insurer for the value of all the tools, parts and equipment found to be missing on the morning of 2 December 1978, including those of the plaintiff. The case came to trial at the 7 January 1980 Session of District Court, Forsyth County. At the close of the plaintiff's evidence, defendant Banasik's motion for directed verdict against the plaintiff on the issue of negligence was granted. At the close of defendant Banasik's evidence, defendant Ohio Casualty's motion for directed verdict against both the original plaintiff Norman and the defendant/cross-claimant Banasik was granted on the ground that the evidence was insufficient to show a "burglary" as defined in the insurance policy and only Banasik appealed. The plaintiff did not appeal from either of the verdicts directed against him and the only matter before this Court is Banasik's appeal from the verdict directed against him.

The Court of Appeals affirmed the trial court's ruling, with Judge Hedrick dissenting, and the propriety of that ruling is now the issue before this Court.

*William B. Gibson, for defendant-appellant Banasik.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by W. Thompson Comerford, Jr. and William A. Brafford for defendant-appellee, Ohio Casualty Insurance Company.*

MEYER, Justice.

The evidence at trial tended to show that Rick Banasik owned and operated an automobile repair shop known as The Motor Works located in an old brick building with a concrete floor on Northwest Boulevard in Winston-Salem. His brother Robert worked as a mechanic there, and when Robert reported to work on Saturday morning, 2 December 1978, he discovered the front door to the building closed but unlocked, several items out of place and several tool boxes opened. Robert called the police and his brother to report a probable burglary. A police officer and Rick Banasik arrived shortly thereafter and began investigating for clues as to how the thief or thieves might have entered the building. They failed to discover initially any signs of forced entry and the police officer left the scene. In continuing his investiga-

tion, Rick Banasik discovered an area on the concrete floor where the mortar dust had been "swept" aside. At that location a steel plate anchored to the floor at the bottom of the left side of the rear door held the door against the rear wall on the interior of the building. He also noticed that one of the bolts was missing from this L-shaped steel plate and was lying several feet away underneath a car. He recalled the police officer to the scene and showed him his discoveries.

The rear door is a large wooden sliding door, and this L-shaped steel plate, along with a similar one on the right side, held in place by two lag bolts on each plate which were screwed into receptables in the concrete floor, serves to prevent the door from being pushed inward. These plates hold the sliding door within its proper path between the plates and the rear wall. The door is opened and closed by sliding it from side to side along the wall. When the steel plates are in their proper location, there is a clearance of a few inches between the door and the wall, so that a person on the outside of the building could put his hand through the clearance between the door and the wall and, with the use of a tool, remove the bolt from the plate. However, with the bolt missing, the steel plate on the left side could swivel so that the door could be pushed inward between twelve and eighteen inches, creating an opening large enough to allow a person to crawl through, and through which the missing items could be removed.

The testimony indicated that the front door had been locked and the bolt and plate on the left side of the rear door were in their normal positions the night before. The front door could be locked or unlocked from the outside only with a key and from the inside only by turning a brass hasp. Keys to the front door were in the possession of Banasik, his brother Robert, and two secretaries. The rear door was secured by a chain and lock and could only be unlocked from the inside. There was no evidence of forced entry or exit at any other door or any window. The front of the building faced a lighted street and the rear faced an unlighted parking lot away from the street.

Banasik was insured against burglary by Ohio Casualty under a policy which defined burglary as:

> [t]he felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by

actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry, or (2) from within a showcase or show window outside the premises by a person making felonious entry into such showcase or show window by actual force and violence, of which force and violence there are visible marks thereon, or (3) *from within the premises by a person making felonious exit therefrom by actual force and violence as evidenced by* visible marks made by tools, explosives, electricity or chemicals upon, or *physical damage to, the interior of the premises at the place of such exit.* (Emphasis added).

The company denied Banasik's claim for recovery under the policy for the items taken, contending then as it does now before this Court, that there was no burglary within the definition of the policy.

The appellant contends that both the trial court and the Court of Appeals erred in concluding that the evidence at trial was insufficient to permit the jury to find that a burglary as defined by the policy of insurance had in fact occurred. We agree.

Ohio Casualty argues that we should affirm the rulings of the lower courts because (1) Banasik's evidence is insufficient to show an entry or exit at the rear door as a more reasonable inference than other theories not covered under the policy, and (2) regardless of where entry or exit may have occurred, a missing bolt does not constitute "visible marks" or "physical damage" within the meaning of the policy.

To support its first contention, Ohio Casualty argues that Banasik has failed to carry the burden of showing that a "burglary" is the more reasonable inference from the evidence, that Banasik has merely offered evidence tending to show that a burglary *could have* occurred, but no substantial evidence tending to show that a burglary *did* occur. The insurance company argues that even if this Court agrees with the appellant that the removal of the bolt constitutes "visible marks . . . or physical damage," it is more likely, or at least equally likely, that any purported entry or exit occurred through the front door of the building which was found unlocked the next morning.

First, we note that it is not uncommon for insurance companies to include in their burglary policies provisions requiring visible marks or physical damage as evidence of felonious entry or exit. The rule requiring construction in favor of the insured does not apply to such provisions because they are not ambiguous. *Clemmons v. Insurance Co.*, 2 N.C. App. 479, 163 S.E. 2d 425 (1968); 44 Am. Jur. 2d *Insurance* § 1401 (1969); *Annot.*, 99 A.L.R. 2d 129 (1965).

We also note that in order to establish a burglary within the wording of the policy, appellant must prove that the thief or thieves at some point used this rear opening as an exit because the only possible visible mark or physical damage existing in this case is on the interior of the premises. Under the definition of "burglary" set out in the policy, if Banasik were proceeding under the theory of entry at this rear door, he would have to show visible marks upon or physical damage to the exterior of the premises. The question on the insurance company's motion for a directed verdict becomes then whether there was sufficient evidence to justify a conclusion by the jury that it is more reasonable to infer that the rear door was used that night to make a felonious exit. *See Adler v. Insurance Co.*, 280 N.C. 146, 185 S.E. 2d 144 (1971). In answering this question, the Court must view the evidence in the light most favorable to the non-movant, resolving all conflicts in his favor and giving him the benefit of every inference that could reasonably be drawn from the evidence in his favor. *Husketh v. Convenient Systems*, 295 N.C. 459, 245 S.E. 2d 507 (1978), *citing Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973); *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977), *citing Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974) *and Adler v. Insurance Co.*, 280 N.C. 146, 185 S.E. 2d 144 (1971). The court's granting of Ohio Casualty's motion for directed verdict was proper only if it appears that Banasik failed to show a right to recover upon any view of the facts which the evidence reasonably tends to establish. *Manganello v. Permastone, Inc.*, 291 N.C. at 670, 231 S.E. 2d at 680; *Cutts v. Casey*, 278 N.C. 390, 180 S.E. 2d 297 (1971). We feel that in light of the fact that an opening was created at the rear door large enough through which a person could crawl and through which the stolen items could be taken and that this opening faces an unlighted parking lot away from

the street, whereas the front door faces the lighted street, the jury would clearly have been justified in inferring that the thief or thieves used the rear door as an exit.

We add that the jury does not have to find that the thief or thieves exited themselves through this door. Just as the "entry" involved in burglary is not confined to the intrusion of the whole body but may consist of the insertion of any part of the body or any instrument with which it is intended to commit a felony, the "felonious exit" which the jury must find occurred at the rear door may consist of merely the exit of a thief's hand in pushing some of the stolen items through the door. *See People v. Pettinger,* 94 Cal. App. 297, 271 P. 132 (1928); *People v. Roldan,* 100 Ill. App. 2d 81, 241 N.E. 2d 591 (1968); 13 Am. Jur. 2d *Burglary* § 10 (1964); W. Lafave & A. Scott, Jr., Handbook on Criminal Law, ch. 8, § 96 at 710-11 (1972); R. Perkins, Criminal Law, ch. 3 at 198-99 (2d ed. 1969).

To support its contention that the missing bolt does not constitute "visible marks" or "physical damage" within the policy of insurance, the insurance company attempts to analogize the facts here to the facts in several other cases. We find each of those cases distinguishable. For example, in *Clemmons v. Insurance Co.,* 2 N.C. App. 479, 163 S.E. 2d 425 (1968), the plaintiff was insured against burglary under a policy containing the same definition of burglary as that in the policy in the case *sub judice.* He was the operator of a combination service station and grocery store. His new building was constructed of concrete block and had metal frame windows. The bottom one-third of the rear window was stationary and the top two-thirds was hinged to swing outward and upward from the bottom. A latch attached to the bottom of the top section fitted over the metal frame across the top of the bottom section to secure the top from opening. Lifting the latch upward to clear the top of the stationary metal frame of the bottom section allowed the window to be opened by pushing outward on the bottom of the top two-thirds section. The latch could not be lifted from the outside of the building but was easily accessible from the inside.

These metal frames and the latch itself were painted dark green. From the time he moved into the new building in August 1966 until the time it was robbed in March 1967, the plaintiff had

never opened the rear window. He had never unlatched the window nor authorized anyone else to unlatch it. However, at times he had left the store building unattended with persons inside while he serviced automobiles on the outside.

When the plaintiff opened his store on the morning of 17 March 1967, he discovered money and merchandise missing. The top section of the metal frame window was open and merchandise was scattered on the floor just inside the window. While the police investigators found no evidence of forcible entry to the building from the outside, the green paint on the inside of the metal along the stationary top of the lower one-third of the window was scratched off just underneath the area where the window latch fitted over it.

At trial, the plaintiff's theory was that someone unlatched the window from the inside of the building while the store was open for business and came back later to gain entry and exit through the unlatched window. The trial judge, sitting without a jury, rendered judgment for the plaintiff, and the defendant appealed arguing that the plaintiff failed to prove a loss coming within the terms of the policy. As here, the issue on appeal was whether the plaintiff's evidence considered in the light most favorable to him was sufficient to support a finding that his loss was covered by the insurance contract, *i.e.*, that there was physical damage to the interior of the premises at the place of exit. The Court of Appeals found no fault with the plaintiff's assertion that someone obreptitiously unlatched the window while the store was open for business and came back to burglarize his store after it had closed, but refused to find that the mark made by the unlatching of the window came within the definition of "physical damage" because that mark was the natural mark which would be made by lifting the latch of the window in the normal manner in which it was designed to be unlatched. Herein lies the difference between the facts in the *Clemmons* case and the facts before us. Rick Banasik discovered a bolt lying several feet away from its place in the L-shaped metal plate, causing the plate to swivel on the remaining bolt and allowing the door to be pulled or pushed inward. This is not the normal manner of opening this door; the normal manner was to slide the door to the side. Had the missing bolt been in its normal place, the door could not have been pulled or pushed inward. Opening this door in the normal

manner of sliding it to the side would not have caused the bolted plate security system any damage. Wrenching the bolt out of the floor did. The normal position of the door was perpendicular to the floor. With the bolt missing, the door could be pushed inward and upward, away from the position it retained in normal use. The bolt had to be replaced in order for the door to function properly in its normal manner. Clearly the removal of the bolt constitutes physical damage to the interior of the premises within the meaning of the policy. Whether a felonious exit occurred at the site of this physical damage is for the jury to determine.

We feel that the facts here are more closely analogous to those in *Ross v. Travelers Indemnity Company,* 325 A. 2d 768 (Me. 1974), where the owner of a clothing store was insured against burglary under a policy defining burglary in essentially the same terms as the policy here. The rear door of the building there opened inward from an alley into a furnace room. It was protected against inward pressure by two wooden bars of the size of "two-by-fours." Metal brackets affixed to the wall on each side of this door held the two bars in place. Two spikes driven into each of the two-by-fours so that they would fall on either side of the metal brackets prevented them from being moved horizontally. The spikes would not prevent the two bars from being lifted vertically from the brackets.

Following the discovery of the burglary in this case, the two bars were found lying on the storeroom floor, as were two spikes which had been removed from one of them by some sort of tool. The Supreme Judicial Court of Maine found that:

[s]ince the two bars with imbedded spikes constitute an integral part of the security system designed to protect the structure from a felonious entry, they must be viewed as a part of the total interior portion of the insured premises. (Citation omitted.)

The removal of these spikes from the bar constituted physical damage to the interior of the premises since these bars constituted a part of the premises as did the two spikes. Furthermore, the holes left in the bar by the removal of the spikes constituted visible marks obviously made by a tool of the force and violence involved.

325 A. 2d at 770. *See also Kretschmer's House of App. v. United States F. & G. Co.*, 410 S.W. 2d 617 (Ky. 1966), 22 A.L.R. 3d 1302 (1968).

Just as the extraction of the spikes in *Ross* damaged the security system by which intruders were denied entry at the rear door, the extraction of the bolt damaged the security system in the case before us.

For the reasons herein stated, the decision of the Court of Appeals affirming a directed verdict in favor of the defendant Ohio Casualty Insurance Company is reversed. The case is remanded to that court for further remand to District Court, Forsyth County for further proceedings consistent with this opinion.

Reversed and remanded.