ATLANTIC TOBACCO COMPANY, PLAINTIFF v. JOSEPH B. HONEYCUTT AND WIFE, BARBARA W. HONEYCUTT, INDIVIDUALLY, HONEYCUTT TRUCK STOP, INC., A NORTH CAROLINA CORPORATION, AND HASSMAN ENTERPRISES, INC., A NORTH CAROLINA CORPORATION, D/B/A HONEYCUTT TRAVEL STORE AND PAYLESS CIGARETTE HOUSE, DEFENDANTS

No. 907SC559

(Filed 18 December 1990)

1. **Corporations § 6 (NCI4th) — action for accounts due — piercing corporate veil — factors**

The Supreme Court in expanding on the mere instrumentality rule for piercing the corporate veil has relied on a definition which requires the domination and control of the corporate entity; the use of that domination and control to perpetrate a fraud or wrong; and the proximate causation of the wrong complained of by the domination and control. Factors which

ATLANTIC TOBACCO CO. v. HONEYCUTT

[101 N.C. App. 160 (1990)]

have been included in determining whether to pierce the corporate veil include inadequate capitalization; noncompliance with corporate formalities; complete domination and control of the corporation so that it has no independent identity; and excessive fragmentation of a single enterprise into separate corporations. It must be remembered above all that the theory of piercing the corporate veil is an equitable one, and would therefore be flexibly applied to serve the ends of justice.

**Am Jur 2d, Corporations §§ 43, 49, 52, 53.**

2. **Corporations § 6 (NCI4th) — action on accounts due — piercing the corporate veil — not justified**

A directed verdict was properly granted for defendant Barbara Honeycutt in an action for accounts due in which plaintiff attempted to pierce the corporate veil because it was apparent that Barbara Honeycutt did not exercise the requisite degree of control over the activities of either Honeycutt Truck Stop, Inc. or Hassman Enterprises, Inc. to justify piercing the corporate veil with respect to her. Although she believed, but was not sure, that she was secretary of the two corporations, there was nothing to suggest that she exercised any control over the operations of the businesses as a result of that capacity and all of plaintiff's evidence regarding control was directed at the activities of Joseph Honeycutt, who was president of the corporations and sole stockholder.

**Am Jur 2d, Corporations §§ 43, 49, 52, 53.**

3. **Corporations § 6 (NCI4th) — action on accounts due — piercing the corporate veil — evidence sufficient to go to jury**

There was sufficient evidence against Joseph Honeycutt to take the case against him to the jury in an action on accounts due in which plaintiff attempted to pierce the corporate veil where Joseph Honeycutt was the president and sole shareholder of the corporations in question; it was undisputed that Joseph Honeycutt completely controlled the two corporate entities indebted to plaintiff, dominating the operations of the entities to the extent of dictating to the bookkeeper which bills to pay, when to pay them, and to what extent; and plaintiff's evidence was that funds from the corporations were transferred to a personal account at Joe Honeycutt's direction to pay mortgages on individually owned property, having the

ATLANTIC TOBACCO CO. v. HONEYCUTT

[101 N.C. App. 160 (1990)]

effect of both increasing the Honeycutts' personal equity in their property and decreasing the assets of the corporations available for creditors.

**Am Jur 2d, Corporations §§ 43, 49, 50-52.**

**Stockholder's personal conduct of operations or management of assets as factor justifying disregard of corporate entity. 46 ALR3d 428.**

APPEAL by plaintiff from order entered 17 April 1990 in NASH County Superior Court by *Judge Napolean Barefoot.* Heard in the Court of Appeals 25 October 1990.

Joseph B. Honeycutt and Barbara W. Honeycutt, husband and wife, operated three separate businesses on land they owned at I-95 and Bagley Road in Kenly, North Carolina: Honeycutt Truck Stop, Inc., originally incorporated in 1967, which operated a filling and service station and Honeycutt Travel store; Honeycutt Restaurant, Inc.; and Hassman Enterprises Inc., which did business under the name of Payless Cigarettes, selling cigarettes, candy and similar items. The three businesses operated out of two main buildings at the location in question. Joseph and Barbara Honeycutt owned the land in their individual capacities.

American Tobacco Company ("plaintiff") is a North Carolina corporation which sold merchandise such as candy, cigarettes and sundries to Honeycutt Truck Stop, Inc. and Hassman Enterprises, Inc. over a period of time. Plaintiff sold a total of $71,910.28 worth of merchandise to the Honeycutt businesses ($24,641.95 to Honeycutt Truck Stop, Inc., and $47,268.33 to Hassman Enterprises, Inc.) for which it was not paid. At the time this action was filed, Honeycutt Truck Stop, Inc. had filed bankruptcy, and Hassman Enterprises, Inc. and Honeycutt Restaurant, Inc. had ceased operations.

Plaintiff filed a complaint on 10 February 1988 against Joseph and Barbara Honeycutt as individuals doing business as Honeycutt Travel Store and Payless Cigarette House for the amount due on the merchandise it had sold and delivered. Plaintiff later amended its complaint to sue the two corporations, Honeycutt Truck Stop, Inc. and Hassman Enterprises, Inc., which owned the businesses. Plaintiff moved for summary judgment against both the corporations and the individual defendants. The trial court granted plaintiff's motion for summary judgment against the two

ATLANTIC TOBACCO CO. v. HONEYCUTT

[101 N.C. App. 160 (1990)]

corporations, but denied it as to the individuals. The two actions as to the individuals were consolidated for trial. At the close of plaintiff's evidence, Joseph and Barbara Honeycutt moved for a directed verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50. The trial court granted the motion, stating that the plaintiff had failed to present evidence from which the jury could infer all the necessary elements of its cause of action. Plaintiff appealed.

*Moore, Diedrick, Carlisle & Hester, by J. Edgar Moore, for plaintiff-appellant.*

*Stubbs, Perdue, Chesnutt, Wheeler & Clemmons, P.A., by Trawick H. Stubbs, Jr. and Linda G. Cauffman, for defendant-appellee.*

*Smith, Debnam, Hibbert & Pahl, by Bettie Kelly Sousa and Elizabeth B. Godfrey, for defendant-appellee Barbara W. Honeycutt.*

DUNCAN, Judge.

The only issue presented on this appeal is whether the trial court erred in directing a verdict for Joseph and Barbara Honeycutt. We hold that the trial court did commit error in directing a verdict in favor of Joseph Honeycutt, but did not err in directing a verdict in favor of Barbara Honeycutt.

Preliminarily, we note that where the question of whether to grant a directed verdict is a close one, it is the better practice for the trial court to allow the case to be submitted to the jury. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 669-70, 231 S.E.2d 678, 680 (1977). In that event, if the jury returns a verdict in favor of the moving party a decision on the motion becomes unnecessary. If, on the other hand, the jury finds for the nonmoving party, the judge has an opportunity to reconsider in the context of a motion for judgment notwithstanding the verdict. If, on appeal, it appears that the motion was improvidently granted, the court may then order entry of judgment on the verdict and avoid the expense and delay of a retrial. *Id.* (citing Comment, G.S. § 1A-1, Rule 50 (1969); 5A Moore's Federal Practice and Procedure § 50.14 (2d ed. 1975)).

On a defendant's motion for a directed verdict, plaintiff's evidence must be taken as true and all the evidence must be considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom. *Norman v. Banasik*, 304 N.C. 341, 283 S.E.2d 489 (1981). Only where

the evidence, when considered in that light, is insufficient to support a verdict in the plaintiff's favor should defendant's motion for a directed verdict be granted. *Snow v. Duke Power Co.*, 297 N.C. 591, 256 S.E.2d 227 (1979).

[1] Plaintiff in the instant case is attempting to "pierce the corporate veil" of the two insolvent debtor corporations and reach the individual assets of Joseph and Barbara Honeycutt as owners. This court has recognized that the doctrine that a corporation is a legal entity distinct from the persons composing it is a legal fiction devised to serve the ends of justice. *Glenn v. Wagner*, 313 N.C. 450, 329 S.E.2d 326 (1985). As an equitable doctrine, it cannot be invoked to subvert the reasons which brought it into existence; thus, a court will disregard the corporate form when necessary to prevent fraud or to achieve equity. *Id.* at 454, 329 S.E.2d at 330 (citing 18 Am. Jur. 2d, *Corporations* § 15 (1965)).

Our Supreme Court has held that where a corporation is so operated that "[i]t is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person . . . ." *Henderson v. Security Mortgage & Finance Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). In expanding on the "mere instrumentality rule" referred to in *Henderson,* our Supreme Court has relied on the definition set forth in *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966), which requires the following elements:

1. the domination and control of the corporate entity;

2. the use of that domination and control to perpetrate a fraud or wrong;

3. the proximate causation of the wrong complained of by the domination and control.

Factors which have been considered in determining whether to pierce the corporate veil include:

1. inadequate capitalization;

2. non-compliance with corporate formalities;

3. complete domination and control of the corporation so that it has no independent identity; and

4. excessive fragmentation of a single enterprise into separate corporations.

*Wagner*, 313 N.C. at 455, 329 S.E.2d at 330 (citing *generally*, Robinson, North Carolina Corporation Law §§ 2-12, 9-7 to -10 (3d ed. 1983) ).

It must be remembered above all that the theory of piercing the corporate veil is an equitable one, and will therefore be flexibly applied to serve the ends of justice. "It is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant [shareholder]." *Id.* at 458, 329 S.E.2d at 332.

[2] When the above considerations are applied to the facts of this case, it becomes apparent that Barbara Honeycutt did not exercise the requisite degree of control over the activities of either Honeycutt Truck Stop, Inc. or Hassman Enterprises, Inc. to justify piercing the corporate veil with respect to her. Barbara Honeycutt testified that she believed that she was secretary of the two corporations, but was not sure. There is nothing, however, to suggest that she exercised any control over the operations of the businesses as a result of that capacity. Her duties included managing the restaurant, ordering the food, making out the schedules, making out the menus, and ordering the items sold by the cigarette store. All of plaintiff's evidence regarding control is directed at the activities of Joseph Honeycutt, who was the president of the corporations and *sole* stockholder.

Since there is no evidence establishing the threshold existence of Barbara Honeycutt's domination and control of the corporate entities, it is not possible to proceed to the further issues of whether that control was used to perpetrate a wrong, or whether the control proximately caused plaintiff's injuries. We therefore hold that the directed verdict as to Barbara Honeycutt was proper.

[3] There was, however, sufficient evidence as to Joseph Honeycutt to take the case against him to the jury. As mentioned above, Joseph Honeycutt was the president and sole shareholder of the corporations in question. That in itself is significant, but there was also additional evidence of the extent to which he dominated the corporations' activities. Sherrill Creech, corporate bookkeeper,

testified that he was only allowed to pay bills at Mr. Honeycutt's direction. Although he could perform the ministerial task of signing the checks, Mr. Honeycutt would tell him whom to pay, when to pay them, and how much to pay them; he had no discretion in that regard.

At the heart of plaintiff's argument is its contention that "money was transferred at will among the various corporations and bank accounts at his [Mr. Honeycutt's] instruction without any effort to collect money owed by each account or corporation, without any formal debt instruments, and without any agreement as to interest or repayment." In taking plaintiff's evidence as true, as we must in reviewing a motion for directed verdict, we find that it was sufficient to take to the jury the question of the appropriateness of disregarding the corporate entity with respect to Joseph Honeycutt.

Mr. and Mrs. Honeycutt set up a bank account, the Honeycutt Rental Account, from which funds were transferred to and among the three corporations. The Rental Account was used to receive funds from the Honeycutts' rental property, both business and personal. The Honeycutts owned various properties, including trailer parks, apartments, rental houses and an ABC store. The rent from those properties was deposited into the Rental Account. In addition, the Honeycutts personally owned the land on which the truck stop and travel store, restaurant and cigarette house were located. The Honeycutts leased that property to the corporations, with the rental payments from the corporations also going to the Rental Account. The rent was based on a formula determined by Joseph Honeycutt, and represented a percentage of the sales at each facility.

Each of the corporate entities had a separate ledger within the Rental Account. Out of the Rental Account, Joseph Honeycutt would direct the payment of the mortgage on the truck stop property, the payment of the business loan taken out to construct the facilities, as well as repair and maintenance expenses. In addition, the Rental Account would, at Joseph Honeycutt's direction, also make the payments on rental property owned by the Honeycutts personally.

As the businesses began to decline, the rent paid, based as it was on a percentage of sales, would no longer cover the amount of the note payments. When that happened, money would be pulled from one of the other corporations and paid to the Rental Account

ATLANTIC TOBACCO CO. v. HONEYCUTT

[101 N.C. App. 160 (1990)]

to cover the payment of the loans. There were thus numerous circular transfers representing loans back and forth among the corporations. All the transfers were noted on the corporate ledgers, but there was no other documentation than the checks themselves. No rate of interest was charged on the loans, and no repayment terms were ever discussed. The bookkeeper testified that the Honeycutts never received any personal checks from the Rental Account. He further testified that the amounts received as rent from the Honeycutts' other income-producing property were more than enough to cover the disbursements—for mortgages and expenses—on behalf of those properties. However, the largest item paid out of the Rental Account was the mortgage on the property on which the truck stop was located—property which the Honeycutts owned as individuals. Rental payments from the corporations were thus being used to directly increase the Honeycutts' equity in the property they owned individually.

Plaintiff also introduced into evidence a ledger page from the corporate records showing that the Honeycutt Truck Stop owed the Rental Account $1,091,736.82. Both defendants contest the validity of this figure, arguing that if all the corporations' records were examined, they would show no deficit from the Truck Stop to the Rental Account, since the corporations were all borrowing from one another.

We hold that plaintiff's evidence is sufficient to go to the jury on the question of whether the corporate entities here should be disregarded with respect to Joseph Honeycutt. First, there is the undisputed fact of Joseph Honeycutt's complete control of the two corporate entities indebted to plaintiff—Honeycutt Truck Stop, Inc., and Hassman Enterprises, Inc. As president and sole shareholder, he dominated the operations of the entities to the extent of dictating to the bookkeeper which bills to pay, when to pay them, and to what extent.

With respect to the element of fraud, Joseph Honeycutt contends that no evidence was presented to show that he personally benefitted from any of the payments from the Rental Account. It is uncontested that no checks were made out to the Honeycutts personally, but that alone is not determinative.

The plaintiff's evidence, which we must take as true, is to the effect that funds from both Honeycutt Truck Stop, Inc., and Hassman Enterprises, Inc., were transferred to the Rental Account

at Joe Honeycutt's direction to pay mortgages on individually owned property. This would have the effect of both increasing the Honeycutts' personal equity in their property and decreasing the assets of Honeycutt Truck Stop and Hassman Enterprises that would be available for creditors. There is certainly sufficient evidence to raise a jury question in this regard.

As to causation, Joseph Honeycutt's complete and exclusive control over fiscal policy and the movement of funds from one account to another could certainly be viewed as proximately causing a deficiency of funds in the accounts of the corporations to pay plaintiff's claims.

Accordingly, the judgment of the trial judge is

Affirmed in part; reversed and remanded in part.

Judges ORR and GREENE concur.