GAVCO, INC., Plaintiff,

v.

CHEM–TREND INCORPORATED,
Defendant,

and

Chem–Trend Incorporated,
Counter–Plaintiff,

v.

Gavco, Inc. and Paul Gavin,
Counter–Defendants.

No. CIV. 3:97CV303H.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 11, 1999.

Keith Merritt, Kilpatrick Stockton LLP, Charlotte, NC, for Gavco, Inc., plaintiff.

A. Todd Capitano, Robinson, Bradshaw & Hinson, Douglas M. Jarrell, Robinson Bradshaw & Hinson, P. A., Charlotte, NC, Bruce T. Wallace, Susan T. Cannell, Hooper, Hathaway, Price, Beuche & Wallace, Anthony P. Patti, Hooper, Hathaway, Price, Beuche & Wallace, William J. Stapleton, Hooper Hathaway Price Beuche & Wallace, Ann Arbor, MI, for Chem–Trend, Incorporated, defendants.

### *MEMORANDUM AND ORDER*

HORN, United States Chief Magistrate Judge.

**THIS MATTER** is before the Court on the following motions and supporting memoranda:

1. Plaintiff GAVCO, Inc. and Counter–Defendant Paul Gavin's "Motion for Summary Judgment" filed January 8, 1999 (document # 53);

2. "GAVCO, Inc. and Paul Gavin's Brief in Support of Motion for Summary Judgment" filed January 8, 1999 (document # 54);

3. "Chem–Trend's Response to Motion for Summary Judgment" and "Brief in Support..." filed February 22, 1999 (document # 63);

4. "GAVCO, Inc. and Paul Gavin's Reply Brief in Support of Motion for Summary Judgment" filed March 25, 1999 (document # 71);

5. "GAVCO, Inc. and Paul Gavin's Motion to Exclude Exhibits" filed March 25, 1999 (document # 72);

6. "Chem–Trend's Response to GAVCO, Inc. and Paul Gavin's Motion to Exclude Exhibits" filed April 14, 1999 (document # 78);

7. "Chem–Trend's Brief in Support of Its Response to GAVCO, Inc. and Paul Gavin's Motion to Exclude Exhibits" filed April 14, 1999 (document # 79); and

8. "GAVCO and Gavin's Reply Brief in Support of Motion to Exclude Exhibits" filed April 23, 1999 (document # 80);

All parties have had an opportunity to respond fully to each other's arguments on each pending motion, and have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c); therefore, these matters are ripe for ruling by the Court.

Having carefully considered the parties' arguments, the record, and the applicable authority, the Court will *grant in part and deny in part* GAVCO and Gavin's Motion to Exclude Exhibits and will *grant in part and deny in part* GAVCO's and Gavin's "Motion for Summary Judgment."

## I. *PROCEDURAL AND FACTUAL BACKGROUND*

The following facts in the instant case are undisputed:

Defendant Chem–Trend employed Counter–Defendant Paul Gavin ("Gavin") as a salesman of its "mold-release" products (which facilitate the removal of manufactured rubber and plastic parts from their cast molds) from 1984 through December 22, 1994. While still an employee in 1990, Gavin executed a confidentiality agreement (the "Confidential Information Guide and Agreement") prohibiting him from ever using any of Chem–Trend's confidential proprietary formulas or trade secrets, and from engaging in competition with Chem–Trend or soliciting its customers for a period of one year following his termination.

On December 22, 1994, Gavin and Chem–Trend mutually ended their employment relationship and Gavin formed a corporation, Plaintiff GAVCO, to serve as an independent sales representative for Chem–Trend; the parties then entered into an "Independent Sales Representative Agreement" ("the ISR Agreement") whereby Chem–Trend assigned GAVCO a particular sales territory and agreed to pay it commissions on all its sales of Chem–Trend Products. The ISR Agreement contained a confidentiality provision (regarding Chem–Trend's proprietary formulas and customer lists), but no covenant not to compete, as the parties were trying to avoid having their relationship characterized as an employment one for tax purposes.

On April 22, 1997, GAVCO gave notice that it would be terminating the ISR Agreement effective July 20, 1997. Immediately after terminating the ISR Agreement, Gavin began working as a manufacturer's representative for W.N. Shaw Company ("Shaw"), a competitor in the mold release agent market. Shaw was formed in 1996 by Gavin and two other former Chem–Trend employees, sales representative Joseph Cahan and lab technician Doug Edington; Gavin provided $20,-000.00 in start-up capital for Shaw, became one of its directors, and began to sell its

products to Chem–Trend customers while GAVCO was still an independent sales representative for Chem–Trend.[1]

Beyond these readily documented facts, the parties disagree widely about exactly how and why their relationship went sour, and, more importantly, their legal obligations to each other as a result of their parting of ways.

GAVCO alleges that immediately after receiving its notice of termination of the ISR, Chem–Trend began imposing duties on it which were not provided for in the ISR Agreement and, more importantly, refused to pay it residual commissions still owed on past sales of Chem–Trend products. Specifically, GAVCO has offered evidence that Chem–Trend requested that Gavin accompany the Chem–Trend representative who would be taking over his old territory on joint sales calls to facilitate the transition. GAVCO refused this request, and Chem–Trend in turn withheld commissions due to GAVCO for sales already completed. Thus, GAVCO instituted this action on May 23, 1997, alleging anticipatory breach of contract and violation of N.C. Gen.Stat. § 66–191 governing the payment of sales commissions following termination of a sales relationship.

Chem–Trend, painting quite a different picture, has counterclaimed against GAVCO and Gavin (collectively, "the Gavin Parties") for breach of fiduciary duty, breach of contract, unfair and deceptive trade practices, civil conspiracy, unjust enrichment, and tortious interference with contractual or economic relations. Specifically, Chem–Trend alleges, in a nutshell, that Cahan and Edington stole Chem–Trend's proprietary formulas for mold release agents sold to its various customers; that Shaw was formed specifically to pro-

duce and sell (through Cahan and Gavin) "knock-offs" of Chem–Trend's product to Chem–Trend's customers at lower prices; and that Gavin began selling Shaw's products to Chem–Trend customers in his territory while still bound under the ISR to use his best efforts to maximize sales of Chem–Trend products. Chem–Trend seeks $40,000,000.00 in damages for these claims, and also asserts each of its claims as an affirmative defense to GAVCO's claim for past-due sales commissions.[2]

The Gavin Parties respond by asserting legal defenses to each of Chem–Trend's counterclaims, contending specifically that the ISR Agreement did not require GAVCO to sell Chem–Trend products exclusively and that GAVCO, as a distinct corporate entity, was not bound by the confidentiality provision of Gavin's prior employment agreement with Chem–Trend. Gavin admits investing in Shaw and selling its products while still bound by the ISR Agreement, but avers that he only sold Shaw products to Chem–Trend customers who had determined that Chem–Trend's products were unsatisfactory and that, in any event, he exceeded his Chem–Trend sales quotas throughout the duration of the ISR.

The Gavin Parties also have moved to exclude a significant portion of the deposition transcripts and documents filed by Chem–Trend in opposition to their motion for summary judgment, arguing that the subject materials were actually produced in the course of the Missouri litigation (to which GAVCO and Gavin are not parties), and are covered by a Stipulated Protective Order which prevents use of materials designated "CONFIDENTIAL COMPETITIVE DATA... for any purpose other than in connection with [the Missouri] liti-

1. Cahan had also left Chem–Trend's employment and formed a new corporation, Newport Industries, to serve as an independent sales representative for Chem–Trend pursuant to a similar ISR Agreement.

2. Chem–Trend filed a separate action against Cahan, Newport Industries, Edington, Shaw, and one other individual alleging essentially

these same causes of action. That action, originally filed in the Eastern District of Michigan and later transferred to the Eastern District of Missouri, was tried beginning April 19, 1999, resulting in a substantial verdict in favor of Chem–Trend *and* in favor of Newport Industries on its claim for residual commissions.

gation." Gavin and GAVCO also contend that the deposition transcripts are not admissible in this action because neither of them was a party to the Missouri litigation, and thus they were not represented at the depositions in question. Finally, the Gavin parties assert that they have not been provided with complete copies of the Missouri depositions from which Chem–Trend has filed excerpts, and therefore have been denied an opportunity to present other portions of those depositions which may be favorable to their position.

## II. DISCUSSION OF CLAIMS

### A. The Summary Judgment Standard.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted only when the pleadings, responses to discovery, and the record reveal that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Federal Deposit Ins., Corp.,* 906 F.2d 972, 974 (4th Cir.1990); *Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505. Rather, once the movant has met its burden, the non-moving party *must* come forward with specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When considering summary judgment motions, courts must view the undisputed facts and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2548. *Accord Matsushita Electric Indust. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990); *and Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980). However, summary judgment is appropriate "when it is clear that there is no dispute concerning either the [material] facts of the controversy or the inferences to be drawn from those facts." *Wall v. AT & T Tech., Inc.,* 754 F.Supp. 1084, 1089 (M.D.N.C.1990), *quoting Pulliam Invest. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

### B. Gavin and GAVCO's Motion to Exclude Exhibits

As a threshold matter, the Court must determine what evidence is properly before it on the instant motion for summary judgment. Of the numerous exhibits filed by Chem–Trend, the Gavin Parties have moved to exclude Exhibits B, C, D, J, M, and O because they are transcripts of depositions taken in the Missouri litigation, to which Gavin and GAVCO were not parties; Exhibit A because it is an affidavit of an expert witness for whom Chem–Trend has neither filed nor served an expert witness report pursuant to Rule 26(a)(2) and the Pre–Trial Order and Case Management Plan issued by this Court; and Exhibits L, N, P, Q, and S because they are Shaw sales invoices, purchase orders, formulas, and other documents produced in the Missouri litigation pursuant to the protective order in that case.[3] Each of these sets of exhibits and arguments will be considered in turn.

1. *Exhibits B, C, D, J, M, and O (Missouri Litigation Deposition Transcripts)*

■ Chem–Trend correctly asserts that deposition testimony may be properly of-

---

**3.** The Gavin Parties' motion to exclude also references Exhibit I (copies of the Employee Security Guide and Agreement signed by Cahan and Edington) and Exhibit R (an Affidavit of Cahan regarding Shaw's production of its mold release formulas in the Missouri litigation), although the grounds upon which they seek to exclude these exhibits is not clear.

fered as evidence on a summary judgment motion; however, only deposition testimony that would be admissible at trial may be considered by the Court.

Rule 32(a) of the Federal Rules of Civil Procedure, which governs "Use of Depositions in Court Proceedings," provides as follows:

At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used *against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof . . .*

The deposition transcripts filed in this case fail to meet this threshold criterion for admissibility; specifically, the depositions were taken in the Missouri litigation, to which Gavin and GAVCO were not parties. The Gavin Parties were neither present nor represented at these depositions, nor did they have any obligation to be present.

The Gavin Parties have also established that they were never given complete copies of the deposition transcripts, and have thus been denied a meaningful opportunity to introduce other portions of the transcript favorable to them, as permitted by Rule 32(a)(4).

Accordingly, these exhibits are inadmissible, and will therefore not be considered in connection with the instant Motion for Summary Judgment.

2. *Exhibit A (Affidavit of Expert Witness James L. Graff, Ph.D.)*

Rule 26(a)(2) requires a party to "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." As to expert witnesses in particular, this disclosure must "be accompanied by a written report prepared and signed by the witness," which report:

shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. Rule 26(a)(2)(B). Subsection (a)(2)(C) of the rule requires these disclosures to be made "at the times and in the sequence directed by the court," or, in the absence of court instruction or the parties' stipulation "at least 90 days before the trial date or the date the case is to be ready for trial." The purpose of the required expert witness disclosures is to provide "information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Commentary to Rule 26(a) (West 1999).

Subsection (e) requires supplementation of expert reports "if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Furthermore, "[w]ith respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty [to supplement] extends both to information contained in the report and to information provided through a deposition of the expert." Fed.R.Civ.P. Rule 26(a)(2)(B).

 In the instant case, the Pre–Trial Order set the deadline for designation of expert witnesses as 60 days prior to the

discovery deadline of July 8, 1998. On May 7, 1998, Chem–Trend timely designated James L. Graff, Ph.D. as one of its expert witnesses, but provided no accompanying written report, stating that "[n]o reports have been issued by any of the above named experts, due to the pendency of discovery, some of which has had to be compelled in the St. Louis litigation." The record contains no indication that Chem–Trend at any subsequent time provided an expert witness report for Dr. Graff, nor any supplementation of its earlier designation of him as an expert. However, neither did the Gavin Parties attempt to depose Dr. Graff, nor have they documented any subsequent requests for his report.

Rule 37(c)(1) provides that:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Chem–Trend's complete failure to provide an expert witness report for Dr. Graff was certainly not justified. As the undersigned has previously admonished Chem–Trend, the pendency of related proceedings relieves *neither* party from diligently conducting discovery, and following the rules regarding same, in *this* action. However, the Gavin Parties could have mitigated any alleged harm by attempting to depose Dr. Graff or filing a motion to compel the production of his expert witness report in anticipation of a deposition; they did neither, and thus are partly responsible for the status quo.

The undersigned will balance the equities by considering Dr. Graff's Affidavit (Exhibit A) for purposes of the Motion for Summary Judgment, but allowing the Gavin Parties to depose Dr. Graff prior to trial, should they desire to do so. Provided, however, any expert witness report shall be disclosed sufficiently in advance of the August trial date to allow a meaningful deposition, or Dr. Graff's testimony and/or report may be *excluded* at trial.

3. *Exhibits L, N, P, Q, and S (documents produced in the Missouri litigation pursuant to protective order)*

■ The Gavin parties contend that the Court should exclude Exhibits L, N, P, Q, R, and S because these documents were provided by Shaw and the other defendants in the Missouri action and are thus subject to a protective order in that case. The undersigned is informed that the defendants in that case have brought this alleged breach of the Missouri action's protective order to the attention of the presiding judge in that action, Magistrate Judge Frederick R. Buckles, by means of a motion for contempt and for sanctions, and that a ruling thereon is expected in the next several weeks; the undersigned will therefore defer any ruling on the ultimate admissibility of these documents *at trial* until such time as either the Missouri court issues its own ruling or the instant case is tried before the undersigned. The evidence will *not* be considered for the purposes of the Motion for Summary Judgment, however.

Thus, only the following documents provided by Chem Trend will be considered by the undersigned in deciding the instant Motion for Summary Judgment:

| | |
|---|---|
| Exhibit A: | Affidavit of Dr. Graff |
| Exhibit E: | Copy of "Confidential Information Guide and Agreement" signed by Paul Gavin on January 29, 1990. |
| Exhibit F: | Affidavit of Brett Miller, Manager of Chem–Trend's Plastics and Rubber Division for North America |
| Exhibit G: | ISR Agreement with GAVCO |
| Exhibit H: | Dun & Bradstreet Report for W.N. Shaw Co. listing Edington and Cahan as the principals of Shaw |
| Exhibit K: | Letter from Shaw to Gavin, stating that Gavin was elected to its Board of Directors as of July 14, 1996 (signed by Joseph Cahan & two other officers of Shaw) |
| Exhibit T: | Not identified, but appears to be portions of a transcript of Gavin's deposition in the Missouri litigation, as evidenced by the objections of counsel for the deponent, designated as Mr. Merritt, who serves as counsel for the Gavin Parties in this case. |

Exhibit U: Letter dated May 6, 1997 from Paul Gavin (on GAVCO letterhead) to Bob McDowell of JPS Automotive Corp., announcing "I have terminated my contract to represent Chem–Trend Incorporated. I will be calling on you soon to introduce my new line of releases, coatings, and adhesives."

## C. *Plaintiff GAVCO's Claim for Past–Due Commissions*

It is undisputed that GAVCO terminated the ISR Agreement with Chem–Trend in a letter dated April 21, 1997; that the termination was, according to both GAVCO's letter and the ISR Agreement, to be effective 90 days from the date of notice; and that Chem–Trend informed GAVCO in a letter dated May 9, 1997 that it would not be paying him any further commissions as of that date. GAVCO claims that Chem–Trend's refusal to pay residual commissions was both a breach of contract and a violation of North Carolina law.[4] Chem–Trend rejoins that its withholding of commissions was justified given GAVCO's expressed and demonstrated refusal to abide by the terms of the ISR and the "Confidential Information Guide and Agreement" signed by Gavin in 1990.

The pertinent terms of the ISR Agreement provide as follows:

2. *Duties of Representative. The Representative shall use best efforts to sell the Products in the Territory* and, in connection therewith, (a) consult with Chem–Trend periodically regarding purchaser needs for the Products, (b) establish and maintain satisfactory relationships with appropriate personnel of potential purchasers, (c) employ, train and compensate an adequate staff of sales personnel, (d) pursue all bona fide inquiries and sales leads referred to the Representative by Chem–Trend, and (e) promptly forward to Chem–Trend all viable inquiries or orders received by the Representative, all at its own expense,

and with no obligation to account to Chem–Trend for its time and effort. *The Representative shall perform such services in a manner which reflects favorably upon the reputation of Chem–Trend and which is conducive to the maximization of sales of the Products . . . .*

3. *Duties of Chem–Trend.* Chem–Trend shall provide reasonable assistance to the Representative in the performance of its duties and shall (a) provide to the Representative sales and technical reference materials, (b) promptly review all orders solicited by the Representative and, as to orders which are accepted, fill those orders in accordance with their terms, and (c) *pay the Representative a commission on a product-by-product basis as computed by Chem–Trend.*

\* \* \* \* \* \*

6. *Commissions. Chem–Trend shall pay to the Representative commissions with respect to all Products sold through the Representative during the term of this Agreement as follows:*

(a) The amount of commissions will be computed on a product-by-product basis as calculated by Chem–Trend.

(b) Products will be deemed "sold through the Representative" *if* the Products' shipping destination is within the Territory and not to an account designated by Chem–Trend as a "National Account." National Accounts are listed in Schedule C.

(c) Products will be deemed "sold during the term of this Agreement" if sold pursuant to a purchase order which is received by Chem–Trend prior to the effective date of termination of this Agreement irrespective of whether acceptance of that purchase order by

---

4. The parties appear to agree that, for the purposes of this motion, Michigan law governs any claims or counterclaims regarding breach of the ISR Agreement or fiduciary duties arising thereunder, but that GAVCO's statutory claim and all of Chem–Trend's business tort claims are governed by North Carolina law.

Chem–Trend and delivery occurs before or after that termination date.

Commissions shall be payable within forty-five (45) days after Chem–Trend receives payment in full of the applicable invoice. The Representative acknowledges that, as a result of this "cash basis" payment procedure it shares with Chem–Trend the risk of a customer's late payment or non-payment. A commission shall be reduced by fifty percent (50%) *if* the applicable invoice is not paid within ninety (90) days of its due date.

\* \* \* \* \* \*

8. *Term and Termination. This Agreement will be effective on the date it is signed by the last of the parties to sign, and will continue thereafter until terminated by either party by written notice, effective three (3) months after the date of delivery.* This contract may be terminated by either party for any reason or no reason. Upon termination, the rights and obligations of the Representative to sell the Products in the Territory shall cease and Chem–Trend will be free to sell the Products directly or through other parties. *The termination of this Agreement shall not, however, relieve Chem–Trend of any commissions payable pursuant to the terms of Section 6 or relieve either party of any obligation based upon acts or omissions prior to the effective date of termination;* provided, that after the effective date of termination, commissions will be reduced by fifty percent (50%) if the applicable invoice is not paid within thirty (30) days of its due date, by seventy-five percent (75%) if the applicable invoice is not paid within sixty (60) days of its due date, and no commission will be paid on any invoice not paid within ninety (90) days of its due date.

(emphasis added).

██ Nothing in the ISR Agreement expressly entitles Chem–Trend to withhold earned commissions based on the ISR's alleged malfeasance or Chem–Trend's suspicions thereof. Rather, the ISR Agree-

ment expressly states that termination of the Agreement does not relieve Chem–Trend of its obligation to pay commissions as accrued; this provision would appear to apply, in fact, even had *Chem–Trend* terminated the ISR specifically because of Gavin's alleged breach of the Confidential Information Guide and Agreement he signed while still an employee of Chem–Trend. Indeed, in a letter dated April 29, 1997, Chem–Trend's Vice–President informed GAVCO that the company intended "to comply fully with the residual commission provisions" of the ISR, even though Chem–Trend has offered evidence that it had learned of Gavin's investment in and sales efforts on behalf of Shaw by that time.

Therefore, there does not appear to be any genuine issue of material fact as to Chem–Trend's liability on GAVCO's breach of contract claim. Chem–Trend's obligation to pay residual commissions was unconditional, under the plain meaning of the contract. Regardless of the nature and extent of its (or Gavin's) outside activities, GAVCO sold a large volume of Chem–Trend products prior to the termination of the ISR Agreement, and nothing in the ISR Agreement entitles Chem–Trend to withhold its commissions thereon.

The question of damages cannot be determined at this stage of the pleadings, however, and—unless the parties settle their respective claims in the meantime—will require a jury trial. Indeed, as discussed below, GAVCO and Gavin may have some offsetting liability to Chem–Trend on the latter's counterclaims, and thus GAVCO's Motion for Summary Judgment will be granted in part, only as to this particular claim for breach of the ISR Agreement.

██ Plaintiff GAVCO also asserts a statutory claim for the past due commissions based on N.C. Gen.Stat. § 66–191, which is entitled "Payment of commissions" and reads as follows:

When a contract between a sales representative and a principal is terminated

for any reason other than malfeasance on the part of the sales representative, the principal shall pay the sales representative all commissions accrued under the contract to the sales representative within 45 days after the effective date of the termination.

N.C. Gen.Stat. § 66–191 (1999).[5] The section immediately following, § 66–192, provides a civil remedy for a violation of § 66–191, specifically:

(a) A principal who fails to comply with the provisions of G.S. 66–191 is liable to the sales representative in a civil action for (i) all amounts due the sales representative plus exemplary damages in an amount not to exceed the amount of commissions due the sales representative, (ii) attorney's fees actually and reasonably incurred by the sales representative in the action, and (iii) court costs.

To the Court's knowledge, no North Carolina court has had occasion to articulate the elements of a claim under these statutes, nor to consider any affirmative defenses which may be available.

The statutory language, however, appears to relieve a principal of its obligation to pay commissions to its sales representatives in only one instance: when the contract is terminated for "malfeasance on the part of the sales representative." GAVCO contends that it is entitled to summary judgment on this claim because Chem–Trend did not terminate the ISR Agreement because of malfeasance on GAVCO's part; rather, GAVCO alleges that *it* terminated the relationship because of its dissatisfaction with the reduction in its sales territory. Chem–Trend responds that Gavin knew that Chem–Trend had found out about his role in the creation of Shaw and the soliciting of Chem–Trend's customers, and he terminated the ISR Agreement preemptively.

Construing the evidence in the light most favorable to the non-moving party, Chem–Trend, the Court finds that there are genuine issues of material fact which render this statutory claim improper for summary judgment. Unlike the ISR Agreement, the statute includes a provision which makes GAVCO's alleged malfeasance relevant; since a reasonable jury could find that GAVCO's and Gavin's activities on behalf of Shaw at some point rose to the level of a breach, or "termination," of the ISR Agreement, it could then find that the ISR Agreement was terminated because of the malfeasance of GAVCO. Whether a jury would so find depends on the resolution of a number of factual issues, such as the nature and extent of Gavin and GAVCO's involvement with the founding of Shaw, the specific efforts which GAVCO/Gavin made to sell Shaw products to Chem–Trend customers while still bound by the ISR Agreement, and when Chem–Trend was sufficiently on notice of Gavin/GAVCO's activities such that it considered the ISR Agreement to have been breached or terminated. Accordingly, GAVCO's motion for summary judgment will be denied as to this statutory claim under N.C. Gen.Stat. § 66–191 *et seq.*[6]

**5.** Under this statute, a "principal" is defined as "a person who does not have a permanent or fixed place of business in this State and who: (a) Manufactures, produces, imports, or distributes a tangible product for sale at wholesale; (b) Contracts with a sales representative to solicit orders for the product; and (c) Compensates the sales representative, in whole or in part, by commission." N.C. Gen.Stat. § 66–190(3) (1991). A "Sales Representative" is defined as "a person who (a) Contracts with a principal to solicit wholesale orders; (b) Is compensated, in whole or in part, by commission; (c) Does not place orders or purchase for his own account or for resale; (d) Does not sell or take orders for the sale of products at retail; and (e) Is not an employee of the principal." N.C. Gen.Stat. 66–190(4) (1991).

**6.** Because it provides for the recovery of "exemplary damages in an amount not to exceed the amount of commissions due the sales representative," as well as attorney's fees and court costs, Plaintiff's claim under this statute is not duplicative of Plaintiff's breach of contract claim.

## D. *Defendants' Counterclaims*

Before addressing the merits of Chem–Trend's counterclaims, the Court must address GAVCO and Gavin's argument that they are legally distinct entities and therefore should not be lumped together for the purposes of liability on Chem–Trend's numerous counterclaims. Chem–Trend rejoins that Gavin and GAVCO were essentially one and the same entity, and that they share each other's rights, duties, and obligations under the various contractual agreements and the law.

Ordinarily, a corporation is considered an entity separate and distinct from its stockholders, and the latter are not held liable for the debts, obligations, or misdeeds of the latter, "whether the corporation has many or only one stockholder." *DeWitt Truck Brokers, Inc., v. W. Ray Flemming Fruit Company,* 540 F.2d 681, 683–84 (4th Cir.1976). However, "this concept of separate entity is merely a legal fiction 'introduced for purposes of convenience and to subserve the ends of justice,'" and courts "decline to recognize [it] whenever recognition of the corporate form would extend the principle of incorporation 'beyond its legitimate purposes and [would] produce injustices or inequitable consequences.'" *Id.,quoting Krivo Industrial Supp. Co. v. National Distill. & Chem. Corp.,* 483 F.2d 1098, 1106, *modified factually,* 490 F.2d 916 (5th Cir.1974); *see also Stone v. Eacho,* 127 F.2d 284, 288–89 (4th Cir.1942).

▬ This power to "pierce the corporate veil," as it is known, "is to be exercised 'reluctantly' and 'cautiously,' and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim." *Id.* at 683. A number of factors, most of which are heavily fact-dependent, are typically considered in determining whether to pierce the corporate veil. As the Fourth Circuit stated in *DeWitt:*

the mere fact that all or almost all of the corporate stock is owned by one individual or a few individuals, will not afford sufficient grounds for disregarding corporateness. *But when substantial ownership of all the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporate fiction on grounds of fundamental equity and fairness,* courts have experienced "little difficulty" and have shown no hesitancy in applying what is described as the "alter ego" or "instrumentality" theory in order to cast aside the corporate shield and to fasten liability on the individual stockholder.

*Id.* at 685 (citations omitted)(emphasis added).

▬ In North Carolina, where a corporation is managed in a way that "[i]t is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person." *Clark v. B.H. Holland Co.,* 852 F.Supp. 1268, 1276 (E.D.N.C.1994), *citing Henderson v. Security Mortg. & Finance Co.,* 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). North Carolina courts examine three areas to determine whether a corporation is a "mere instrumentality," namely: (1) the domination and control of the corporate entity; (2) the use of that domination and control to perpetrate a fraud or wrong; and (3) the proximate causation of the wrong complained of by the domination and control. *Id.,citing Atlantic Tobacco Co. v. Honeycutt,* 101 N.C.App. 160, 164, 398 S.E.2d 641, 643 (1990); *Glenn v. Wagner,* 313 N.C. 450, 454–55, 329 S.E.2d 326, 330–331 (1985). Other factors considered by the courts in applying this test include whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-function-

ing of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *Glenn,* 313 N.C. at 458, 329 S.E.2d at 332; *DeWitt,* 540 F.2d at 687 (and cases cited therein); *Dassault Falcon Jet Corp. v. Oberflex, Inc.,* 909 F.Supp. 345, 350 (M.D.N.C.1995) (citing same factors). Finally, in North Carolina, "domination sufficient to pierce the corporate veil need not be limited to the particular transaction attacked," although "it will be a rare case in which the corporate veil will be pierced when the domination does not extend to the transaction attacked." *Glenn,* 313 N.C. at 456, 329 S.E.2d at 331.

■ In this case, it is undisputed that Gavin formed GAVCO at Chem–Trend's request, and that GAVCO was designed to be a separate entity from Gavin so as to avoid the appearance of an employment relationship between Gavin and Chem–Trend under the terms of the ISR Agreement. Gavin has averred that GAVCO followed corporate formalities at all pertinent times and that all of his product sales—whether of Chem–Trend or Shaw products—were conducted in his capacity as an employee of GAVCO; however, the observance of corporate formalities is but one of many fact-laden factors to be considered in determining the issue of whether to pierce the corporate veil. The Court does not have enough information to determine whether GAVCO ought to be held liable for Gavin's alleged misuse of confidential information in violation of the Confidential Information Guide and Agreement, or whether Gavin ought personally to be bound by the terms of the ISR Agreement between GAVCO and Chem–Trend.

Given that the issues involved include not only straight breach of contract claims, but also allegations of various fiduciary duties arising out of these contracts and the relationships created incident and ancillary thereto, the Court cannot, with the limited information before it, distinguish between GAVCO and Gavin for the purposes of determining liability on Chem–Trend's counterclaims. Simply put, because there remain genuine issues of material fact with regard to the structure and operation of GAVCO by Gavin, it would be improper at this stage of the proceedings to determine the corporate veil/alter ego issue in favor of Gavin and GAVCO.

■ Similarly, numerous genuine issues of material fact preclude the Court from awarding judgment as a matter of law in favor of Gavin and GAVCO on Chem–Trend's counterclaims. Indeed, in the light most favorable to Chem–Trend, the non-moving party, the evidence properly before the Court tends to show that the ISR Agreement was understood by both parties to be a formality to avoid the appearance of an employer relationship but was in fact intended to remain an exclusive dealing relationship; that Gavin invested in and became a director of Shaw in July 1996, approximately nine months before he gave notice of termination of the ISR Agreement; that Shaw through Cahan and Gavin began selling nearly identical mold release products to Chem–Trend's customers in GAVCO's territory, as eventually discovered by Brett Miller, Manager of Chem–Trend's Plastics and Rubber Division for North America; and that Gavin used confidential information regarding Chem–Trend's customers—and, more importantly, their particular product needs—to steer them towards Shaw products, even while he remained bound by the ISR Agreement.

The evidence properly before the Court could enable a reasonable jury to find in favor of Chem–Trend on all or a portion of its counterclaims, as each of these factual issues is in some measure relevant to each of the theories of liability asserted by Chem–Trend. Accordingly, to grant the Gavin Parties' motion for summary judgment would be improper.

## III. *ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. GAVCO, Inc. and Paul Gavin's Motion to Exclude Exhibits (document # 72) is **GRANTED**, but *only as to Exhibits B, C, D, J, M, and O.*

2. Plaintiff GAVCO's and Counter–Defendant Gavin's "Motion for Summary Judgment" (document # 53) is **GRANTED IN PART AND DENIED IN PART**; specifically, the motion will be **GRANTED** *only as to GAVCO's claim for breach of the ISR Agreement.* All other issues— including the issue of damages on GAVCO's breach of contract claim—remain for trial, which is presently calendared for the civil term beginning August 30, 1999.

3. The parties are reminded that they must comply with the pre-trial filing requirements set forth in the Pre–Trial Order and Case Management Plan governing this case.

4. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.