NORRIS BROTHERTON AND WIFE, EDITH BROTHERTON, PLAINTIFFS v. THE POINT ON NORMAN, LLC AND ESP ASSOCIATES, P.A., DEFENDANTS

No. COA02-668

(Filed 18 March 2003)

## 1. Unfair Trade Practices— lakefront real estate sales—size of lot changed

Evidence that plaintiffs were misled into thinking that they were buying a lot with more lakefront footage than they ultimately received was sufficient for an unfair and deceptive trade practices claim to survive a motion for a directed verdict.

## 2. Damages— sale of real estate—evidence sufficient

The evidence of damages in the sale of lake front real estate was sufficient to survive a motion for a directed verdict for defendants on an unfair and deceptive trade practices claim.

Appeal by plaintiffs from order entered 29 October 2001 by Judge Clarence E. Horton, Jr. in Iredell County Superior Court. Heard in the Court of Appeals 12 February 2003.

*Raymond A. Warren for plaintiffs-appellants.*

*Homesley, Jones, Gaines, Dudley, McLurkin & Donaldson, PLLC, by Elise B. Mclurkin, for defendant-appellee.*

TYSON, Judge.

Norris Brotherton and his wife, Edith, ("plaintiffs") appeal from the grant of directed verdict in favor of The Point on Norman, LLC ("The Point") on the issue of unfair and deceptive trade practices. We reverse and remand for trial.

BROTHERTON v. POINT ON NORMAN, LLC

[156 N.C. App. 577 (2003)]

## I. Background

This is the second appeal of this case to this Court. In *Brotherton v. Point on Norman, LLC*, 141 N.C. App. 734, 542 S.E.2d 712 (2001) (unpublished) (*"Brotherton I"*), plaintiffs appealed the grant of a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2001). We held the trial court correctly granted the motion to dismiss plaintiffs' claim of breach of contract against The Point and all claims against ESP Associates. We further held that plaintiffs' allegations were sufficient to survive a Rule 12(b)(6) motion for their claim of unfair and deceptive trade practices by The Point and reversed and remanded on that issue. *Brotherton I.*

At trial, plaintiffs presented the following evidence: During the summer of 1998, The Point sought to sell various lots in its new subdivision located near Lake Norman. John Touchberry, a sales associate for the Point, encouraged plaintiffs to participate in a "Lot Draw" for selection of a lot. At the insistence of Touchberry, plaintiffs traveled to the property and walked over multiple lots to find lots which appealed to them. On Lot 31 of Phase 1B ("Lot 31"), plaintiffs found corner stakes and building pad stakes from which they determined the size, direction, and area of the lot. Lot 31 was plaintiffs' first choice. Plaintiffs also selected other suitable lots in the event Lot 31 was unavailable.

The Point sold the subdivision lots through a lottery system. On 19 September 1998, The Point held a gala and "Lot Draw" for parties who had purchased tickets for $1,000 per ticket. Plaintiffs attended and received number 89 which allowed them to be the eighty-nineth party to select a lot for purchase. Lot 31 was still available and plaintiffs selected it to purchase. Plaintiffs, under protest, initialed the sales contract showing they had received documentation not actually provided to them.

After the Lot Draw, plaintiff visited Lot 31 "many, many times" and testified that the stakes on the corners of the lot remained in the same locations as when plaintiffs walked the lots prior to the lottery. In mid-October, plaintiffs observed that the stakes had been relocated that resulted in a loss of approximately thirty-five feet of lakefront. The Point refused to convey plaintiffs the property as originally staked.

The Point provided plaintiffs with a septic tank permit which showed Lot 31, that contained 41,905 square feet. After contracting to

purchase Lot 31 and in reliance of The Point's representations of the larger area of the lot, plaintiffs began the process to build their dream home on the lot. Plaintiffs purchased supplies, rented storage space, and obtained house plans for the lot.

With the change of the boundary lines, the area of the lot was reduced to 39,804 square feet. Plaintiffs testified that due to the reduction in the lot size, they could not build the house according to the plans on Lot 31. After plaintiffs presented their evidence, The Point moved for and was granted a directed verdict. Plaintiffs appeal.

## II.  Issue

Plaintiffs contend the trial court erred in granting a directed verdict in favor of The Point at the close of plaintiffs' evidence.

## III.  Directed Verdict

Defendant's motion for a directed verdict should only be granted at the close of the plaintiff's evidence when plaintiff is given the benefit of every reasonable inference to be drawn from the evidence and the evidence is: (1) taken as true, (2) regarded in a light most favorable to the plaintiff, and (3) "insufficient to support a verdict in the plaintiff's favor." *Atlantic Tobacco Co. v. Honeycutt*, 101 N.C. App. 160, 163-64, 398 S.E.2d 641, 643 (1990), *disc. rev. denied*, 328 N.C. 569, 403 S.E.2d 506 (1991). "The party moving for a directed verdict bears a heavy burden in North Carolina. The court should deny a motion for directed verdict when there is more than a scintilla to support plaintiffs' prima facie case." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923, *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998).

"An unfair and deceptive trade practice claim requires plaintiffs to show: (1) that defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) plaintiffs were injured thereby." *Id.* at 574, 495 S.E.2d at 923. The parties concede that defendant's practice was "in or affecting commerce." *Id.* This Court previously held that plaintiffs' allegations, taken as true, are sufficient to allege a claim for unfair and deceptive trade practices. *Brotherton I.* This Court also held that "this claim is one in tort and not on the contract. Therefore, the rule that all prior negotiations and representations are merged into the writing does not apply." *Brotherton I.*

## A.  Unfair and Deceptive Trade Act or Practice

[1] Plaintiffs contend they submitted sufficient evidence for a jury to find that "defendant[] committed an unfair or deceptive act or prac-

tice." *Edwards*, 128 N.C. App. at 574, 495 S.E.2d at 923. Plaintiffs need not show a deliberate act of deceit or bad faith to prevail. *Id.* at 575, 495 S.E.2d at 924. Plaintiffs must show "the act 'possessed the tendency or capacity to mislead or created the likelihood of deception.'" *Id.* at 574, 495 S.E.2d at 924 (quoting *Forsyth Memorial Hospital v. Contreras*, 107 N.C. App. 611, 614, 421 S.E.2d 167, 170 (1992), *disc. rev. denied*, 333 N.C. 344, 426 S.E.2d 705 (1993)). Further, "[a] party is guilty of an unfair act or practice when it engages in conduct; which amounts to an inequitable assertion of its power or position." *Id.*

This Court reviewed plaintiffs' allegations and determined plaintiffs' sufficiently alleged a claim of unfair and deceptive trade practices:

> Plaintiffs have alleged that defendant misled them into thinking they were receiving a larger lot. Allegedly, defendant made a representation through boundary stakes that the lot consisted of thirty-five more feet of waterfront than the property actually contained. Additionally, defendant did not give the plaintiffs a plat with the actual boundary lines at the time of the contract signing. According to the plaintiffs, defendant's representatives told them it would deliver the plat later. Defendant's representatives took this action although defendant Point on Norman had filed the plat with the Iredell County Register of Deeds two days earlier. Further, plaintiffs acted on these representations by making plans to build a residence on the lot.

*Brotherton I.*

Reviewed in a light most favorable to plaintiffs, plaintiffs presented sufficient evidence of each element of an unfair or deceptive act or practice by defendant, particularly in light of this Court's prior holding that the allegations were sufficient to state such claim.

Ms. Brotherton testified that Touchberry, a sales associate for The Point, told plaintiffs to go walk the property. He told them "to be sure that [they] go out there ahead of time and look at—walk over several lots."

Plaintiffs asked for a copy of plats for multiple lots including Lot 31. Touchberry provided plats for all of the lots plaintiffs requested, except Lot 31. Plaintiffs again specifically requested and were not provided a plat for Lot 31. Despite repeated requests, plaintiffs did not receive the plat for Lot 31 until October 1998, after they had exe-

cuted their contract to purchase. The Point filed a plat with Iredell County on 18 September 1998, one day prior to the lottery and two days prior to the signing of the contract.

Ms. Brotherton testified that she was required to initial the contract after she informed defendant that she did not agree with what she was signing. The sales contract that plaintiffs initialed stated:

Purchaser acknowledges that it has received, read, understood and agreed to each of the documents listed below (which documents are incorporated herein by reference) and that Purchaser will be bound by the provisions thereof; as further evidence of its receipt from Seller of such documents, Purchaser has initialed on the line corresponding to each document:

(a) Plan for the Offering of Memberships in The Point Lake & Golf Club (the "Club Membership Plan")

(b) Plan of Development and Subdivision Disclosure Statement (the "Plan of Development")

(c) Declaration of Covenants, Conditions and Restrictions for The Point (as amended, supplemented and assigned from time to time, the "Declaration")

(d) Architectural and Landscape Guidelines for The Point (as amended and supplemented from time to time, the "Guidelines")

(e) Annual Budget of The Point Owners Association, Inc. (the "POA")

(f) Copy of Map Book 31, Page 50 (Plat for Lot #31, recorded at the Iredell County Register of Deeds) (the "Map")

Mrs. Brotherton testified that neither she nor her husband were provided any of the documents listed until after they initialed the contract. When she asked for the documents, she was told that she would get them after she signed. When she asked for a copy of the plat, a representative of The Point stated they would provide it "later." After she balked initially, she was told by Art Raymond, defendant's agent, to "initial it or leave."

Plaintiffs presented evidence that they went to the lot "many, many times" after closing and that the location of the stakes on the property had not changed. The Point argued that the change in the stakes occurred through the actions of the independent contractor over whom they had no control and whose actions could not be

imputed to them. However, plaintiffs presented evidence that ESP Associates, PA, the surveying company, was "asked to re-stake the lot corner of 31 and 32" on the orders of The Point. ESP changed the stakes only at the direction of and after demand by The Point.

The Point provided plaintiffs with a septic tank permit for Lot 31 which represented the area as 41,905 square feet, the same area shown by the location of the original stakes. The lot offered to plaintiffs was 39,804 square feet, the area after the corner stakes were moved.

Plaintiffs' evidence showed that The Point misled plaintiffs into thinking they were receiving a larger lot with thirty-five additional feet of lakefront. The Point's representations arose from the boundary stakes, the septic tank permit, and defendant's requirement that plaintiffs walk the property and see it for themselves. The Point failed to provide plaintiffs with a plat showing the recorded boundary lines at the time of the contract signing. The plat had been recorded and was specifically requested by plaintiffs. The Point inequitably asserted its power when it required plaintiffs to sign and initial the sales contract prior to plaintiffs' receipt and review of documents referenced therein, despite plaintiffs' request for those documents and The Point being in possession of the documents. In the light most favorable to plaintiffs, this evidence is sufficient for the jury to determine whether The Point engaged in unfair and deceptive acts or practices.

## B. Damages

[2] Defendant argues that plaintiffs failed to show actual damages. To recover on unfair and deceptive trade practices, plaintiffs must show they "suffered actual injury as a proximate result of defendants' misrepresentations." *Edwards*, 128 N.C. App. at 574, 495 S.E.2d at 923. "Plaintiffs' actual injury can include the (1) purchase price plus interest and closing costs; (2) loss of the use of specific and unique property; and (3) loss of the appreciated value of the property." *Id.* at 575, 495 S.E.2d at 924.

Plaintiffs presented evidence that, in reliance upon defendant's representations and unfair and deceptive acts, they (1) lost money they spent on plans and supplies for the home that could not be built on the reduced Lot 31, (2) incurred storage charges, (3) lost the use of the specific and unique property, and (4) lost the use of the $25,500 down payment for the lot.

**FREEMAN v. PACIFIC LIFE INS. CO.**

[156 N.C. App. 583 (2003)]

In its brief, The Point argues that "[a] review of the Complaint will very clearly show that the Plaintiffs-Appellants have failed to plead that they have been injured in any respect by any act of the Defendant-Appellee." This Court previously held that the complaint was sufficient to allege a cause of action for unfair and deceptive trade practices. The complaint included an allegation of actual damages. Plaintiffs presented sufficient evidence of actual damages to survive defendant's motion for a directed verdict.

### IV. Conclusion

Plaintiffs presented sufficient evidence to support a claim for unfair and deceptive trade practice by The Point, especially in light of this Court's previous holding that the allegations in the complaint were sufficient to state a claim. The trial court erred in granting The Point's motion for a directed verdict at the end of plaintiffs' evidence.

Reversed and remanded.

Judges McCULLOUGH and CALBRIA concur.